RAINBOLT v. LAMSON BROS. et al.

(Circuit Court of Appeals, Eighth Circuit. May 28, 1919.)

No. 5253.

1. CARRIERS ⊜⇒59—BILLS OF LADING—RIGHTS OF TRANSFEREE.

A bill of lading for a car of grain, stamped on its face, "Receipt issued for this bill of lading under rules of Omaha Grain Exchange," held to charge a transferee, who was a member of the exchange, with notice that, as provided in such rules, title to the grain remained in the holder of the receipt until he was paid therefor.

2. CARRIERS ⊜⇒55—BILLS OF LADING—NEGOTIABILITY.

A notation on a bill of lading for a car of grain, which rendered it nonnegotiable, held not invalidated under Act Aug. 29, 1916, § 3 (Comp. St. § 8604b), by a subsequent rebilling of the car in interstate commerce without the knowledge of the legal owner of the grain.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Carroll S. Rainbolt, doing business as the Rainbolt Corn Company, against Lamson Bros. and others. Judgment for defendants, and plaintiff brings error. Reversed.

Frank H. Gaines, of Omaha, Neb. (McGilton, Gaines & Smith, of Omaha, Neb., on the brief), for plaintiff in error.

Francis A. Brogan, of Omaha, Neb. (Alfred G. Ellick, of Omaha, Neb., on the brief), for defendants in error.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

STONE, Circuit Judge. The facts pleaded and proven are as follows:

The plaintiff, doing business under the trade name "Rainbolt Corn Company," purchased a carload of corn in Omaha from the Farmers'

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Grain & Supply Company, the grain having been shipped from Merna, Neb., on the Chicago, Burlington & Quincy Railroad, to Omaha. The bill of lading representing the corn was sent to a bank in Omaha with draft attached, and upon payment of the draft Rainbolt obtained possession of the bill of lading. The car of grain was then sold by the plaintiff to the U. S. Commission Co. (a trade-name for W. R. Richter) on the floor of the Omaha Grain Exchange, both Richter and Rainbolt being members of the Grain Exchange, which is a corporation. Rainbolt indorsed the bill of lading on the back and stamped on the face these words:

"Receipt issued for this bill of lading under rules of Omaha Grain Exchange to Rainbolt Corn Company."

The bill of lading, thus indorsed and stamped, was then delivered to Richter. The receipt called for on the bill of lading is as follows:

"Received of Rainbolt Corn Company, of Omaha, Nebr., bill of lading, executed by the C., B. & Q., dated at Merna, Nebraska, covering a car of corn, for which the undersigned agrees to pay to Rainbolt Corn Company the sum of $2.28 per bushel within six days from the date hereof, or, if not unloaded, will advance 75 per cent. of the value upon surrender of this receipt. Said bill of lading describes said car as No. 114217, initials C. B. & Q., capacity ——— lbs.

"It is agreed by us that the title to said bill of lading and contents of said car shall remain in the Rainbolt Corn Company, or their assigns, until the undersigned has paid Rainbolt Corn Company, or their order, the entire purchase price of said grain at said rate. Upon full payment to Rainbolt Corn Company, or order, of said purchase price as aforesaid, and the surrender of this receipt, the title to said bill of lading and contents of said car shall pass to the undersigned.                    [Signed]    U. S. Commission Co."

The rule of the Grain Exchange covering receipts of this character is as follows:

"Where a bill of lading is transferred, and the party receiving the same issues and delivers to the person surrendering the bill of lading a receipt therefor, stating that the title to the grain covered by said bill of lading shall remain in the party holding said receipt until the same is fully paid for, then the person issuing such receipt is hereby prohibited from accepting or receiving advances on said bill of lading, or negotiating the same, so long as the receipt therefor is outstanding.

"Where a bill of lading is transferred and receipt issued therefor as above provided, the party transferring the same shall plainly stamp or write across the face of said bill of lading the words: 'Receipt issued for this bill of lading under rules of Omaha Grain Exchange to [Name of Holder of Receipt.]' "

Richter took the bill of lading to the Burlington Railroad and had the car shipped to Chicago, Ill., under reconsignment permitted by the tariffs and rates of the railway. To carry out the reconsignment arrangement the railway agent at Omaha drew lines through the consignor, consignee, origin, and destination points as shown by the bill of lading and inserted:

"Order U. S. Commission Co., Chicago, Ill.   Notify Lamson Bros. Co., Chicago, Ill."

Richter caused the bill of lading to be sent to a Chicago bank, attached to a draft. This draft was paid by Lamson Bros. Company, they received the carload of grain on the bill of lading and convert-

ed it to their own use. Lamson Bros. & Co. maintained an office in Omaha and held a membership in the Omaha Grain Exchange, the same being carried in the name of C. E. Hunter, an employé of the firm who had charge of the Omaha office. Shortly after the sale by Lamson Bros., Richter, being insolvent, absconded. No payment was made to Rainbolt Corn Company or the plaintiff for the grain in controversy.

The answer was based upon two propositions: First, that defendants were purchasers in good faith for value without notice of the agreement contained in the receipt issued to the Rainbolt Corn Company; and, second, that the shipment to Chicago being interstate, and therefore governed by national statutes, "that restrictions attempted to be placed upon the negotiability of the said bill of lading after its reissue by the railroad company as aforesaid, and any rules of the Omaha Grain Exchange attempting to limit the negotiability of the said bill of lading are each and all void and of no effect." From judgment upon a directed verdict, plaintiff brings the case here.

[1] Defendant claims that it had no notice, except such as might be credited to the stamp on the face of the bill of lading, that "receipt issued for this bill of lading under rules of the Omaha Grain Exchange to Rainbolt Corn Company," and that such constituted no notice. The testimony is clear that they had no other notice or information than that given by the face of the bill of lading. Was this, under all the attendant circumstances, any or sufficient notice? An inspection of a photographic copy of the bill of lading defeats defendants' contention that the above notation on the bill was so blurred and covered by other indorsements as to be illegible. There is no dispute that it was there when they received it upon payment of the draft to which it was attached. They are chargeable with whatever, if any, notice the notation would carry to them. In the uninitiated this unusual notation would arouse attention. To such as were initiated it would be ample notice as to how the grain was held, and put them upon inquiry as to whether the receipt were still outstanding. Defendants belong to the latter class. They had a branch office at Omaha; they had a membership on the Omaha Grain Exchange, and dealt thereon through this membership. They cannot be heard to plead ignorance of the rules under which members operated. With such knowledge the meaning of the notation would have been as clear to them as to the man who placed it there. We entertain no doubt as to the sufficiency of the notice. The existence of notice takes them from under the protection of the Nebraska statute (Rev. Stat. Neb. 1913, par. 2636) governing conditional sales—even if this be deemed a conditional sale.

[2] Defendants' second contention that the Pomerene Act of August 29, 1916, c. 415, § 3, 39 Stat. 539 (Comp. St. § 8604b), would prevent this notice on the bill from being operative because it would be a restriction upon the negotiability of an interstate bill of lading, is unsound under this record. Here the overwhelming proof is that the notation was on the bill before it was made an interstate bill without the knowledge or consent of the party intended to be protected by that notation. Plaintiff swore positively that he had placed it on the bill

of lading before he delivered the bill to Richter. An officer of the bank which made the draft on Chicago with this bill, and whose duty it was to examine such drafts and bills of lading, thought it was not there at that time; but he admitted he had no independent recollection of this particular bill of lading. It is also certain that when the bill was taken from the Chicago bank the notation was on it. The railway clerk at Omaha, who changed the bill of lading for the shipment to Chicago, said regarding the notation, "I did not pay any attention, and don't know whether I noticed it or not." The very most that might be said for defendants upon this evidence is that it presented a question of fact, but in our judgment the substantial evidence is all one way.

The act of the railway or others in changing this bill of lading to cover an interstate shipment after the notation was thereon cannot affect the force of that notation, and thus destroy, without their knowledge and consent, the rights of those protected thereby.

The judgment is reversed, with instructions to proceed in accordance with this opinion.