STANDARD GRAIN COMPANY, APPELLEE, V. STATE BANK OF OMAHA, APPELLANT.

· FILED APRIL 11, 1921.  No. 21413.

1. Carriers: BILLS OF LADING: CONVERSION. Under rules of the Omaha Grain Exchange, when a car of grain is sold and the bill of lading is assigned, the buyer issues a receipt stipulating that title shall remain in the seller until the grain is paid for, and a notation of the issuance of the receipt is stamped upon the bill of lading, thereby giving notice to Exchange members that negotiation of the bill of lading is prohibited until the seller is paid. *Held*, that a bank to which a bill of lading bearing such notation is indorsed, with accompanying draft, for deposit and credit, and through which the said paper is negotiated and the grain wrongfully sold, is liable to the owner for conversion, if knowledge on the bank's part of the meaning of said notation and of the Exchange rules is directly shown or can reasonably be inferred from its previous experience and dealings.

2. ——: ——: NOTICE. Evidence examined, and *held* that the appellant bank was shown to have had knowledge of the meaning of the restrictive notation upon the bills of lading and was therefore put upon inquiry and chargeable with notice of the appellee's title to the grain.

3. ——: ——: ——: LIABILITY OF AGENT. The fact that a bank acts as agent for the collection of a draft with bill of lading for grain attached, and not as purchaser thereof, will not relieve it from liability to the owner of the grain if, from a notation appearing on the face of the bill of lading, the bank, under the circumstances of the case, is chargeable with knowledge that its principal is without authority to negotiate it.

4. ——: ——: LAW GOVERNING. Subsequent transfers of a bill of lading constitute new and independent contracts which are governed by the law of the state where made.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Gaines, Van Orsdell & Gaines,* for appellant.

*Brogan, Ellick & Raymond* and *C. Y. Offutt, contra.*

DORSEY, C.

This case was commenced by the appellee, a corporation

dealing in grain on the Omaha Grain Exchange, in the form of a suit in equity, praying for an accounting by the appellant, a banking institution of Omaha, for the value of the contents of three cars of corn which the appellee alleged had been converted to its own use by the appellant as the result of wrongful negotiation through it of the bills of lading therefor, and asking that the amount thereof be applied upon the notes of the appellee which the appellant held. In its answer, the appellant pleaded a denial of the alleged conversion and a counterclaim for the amount due on the notes. The cause was tried to the court, sitting in equity without a jury, and the court found that the conversion had taken place as alleged, and entered judgment in favor of the appellee for a balance remaining after the amount due upon the notes was deducted from the value of the corn.

A brief statement of the rules and customs applicable to business upon the Omaha Grain Exchange and to the dealings between members thereof and the local banks is necessary to a clear understanding of the issues. When a car of grain is sold it must be unloaded, weighed and graded in order to ascertain the exact price, and, in order to make the seller safe in the meantime, the rule is that, when the bill of lading is assigned by the seller to the buyer, the latter at the same time gives the seller a receipt, specifying the car number and other details of the transaction, and stating therein that the title to the grain shall remain in the seller until paid for. A notation that the receipt has·been issued is stamped upon the bill of lading, and this, under the Exchange rules, imparts conclusive notice to members of the Exchange of the rights of the seller and of the fact that the holder of the bill of lading has only a conditional title to the car of grain covered thereby. It is the custom of banks loaning money to dealers on the Grain Exchange to require the deposit either of the original bill of lading or, if the car has been resold, of the receipt issued as aforesaid, as collateral security.

The appellee's right to recover rests, in substance, upon one or both of the following propositions:

(1)    There was stamped upon each of the bills of lading a notation' in these words: "Receipt issued for this bill of lading under the rules, of Omaha Grain Exchange. Standard Grain Company." This, under the rules, was notice to members of the Exchange that the appellee had reserved title to the grain, and that Richter, to whom the appellee had assigned the bill of lading, was prohibited from negotiating it until the grain had been paid for. The contention is that, by reason of its familiarity with such notations upon bills of lading taken by the bank in the usual course of its business with dealers upon the Grain Exchange, the appellant was chargeable with such knowledge of the meaning and effect thereof as all banks habitually dealing with members of the Exchange had, or with reasonable diligence should have had. When, therefore, it took the assignment of the bills of lading and credited Richter with the amount of the drafts drawn thereon, the appellant is presumed to have known that the sale of the grain thereby negotiated was unlawful and in prejudice of the appellee's rights.

(2)    The appellant held as collateral security the identical receipts referred to in the notations on the bills of lading which it assisted Richter in negotiating, and thus knew, or with reasonable care and caution in the protection of the securities held by it should have known, that, in permitting Richter to negotiate the bills of lading through the bank, it was in effect aiding in the destruction of the collateral security which it held in trust.

When Richter indorsed the drafts and the attached bills of lading to the appellant bank, and the latter gave him credit in his general account for the amount thereof, the bank became the holder of the drafts for value in due course, and, as between the appellant and Richter, the bank had title to the paper. *National Bank of Commerce v. Bossemeyer*, 101 Neb. 96; 7 C. J. 635, sec. 314. And it is also true that the bank would be regarded as the

owner of the grain covered by the bills of lading as against an attaching creditor of Richter. *Cox Wholesale Grocery Co. v. National Bank of Pittsburg,* 107 Ark. 601.

But it is not a question here of the rights or equities of the bank as against Richter or his creditors. The question is whether, by acting as a medium through which the drafts with bills of lading attached are negotiated, a bank makes itself liable as a wrongdoer to the real owner of the grain in case the party with whom it deals is without authority to negotiate them. This question, we think, must be resolved upon the general principle that, in conducting its business, a bank must not knowingly trespass upon the rights of another or assist in perpetrating a wrong. It turns, then, upon whether the circumstances were such that it could be reasonably inferred that the appellant knew that Richter was without authority. The appellant is chargeable with such knowledge as a reasonable inspection of the bills of lading would convey, in the light of its previous experience and information gained from similar transactions. The notation as to the receipt having been issued to the appellee under the rules of the Exchange clearly appeared upon the face of each of the bills of lading. A precisely similar notation was referred to and discussed in *Rainbolt v. Lamson Bros.,* 259 Fed. 546, in which the following observations were made in the opinion:

"In the uninitiated this unusual notation would arouse attention. To such as were initiated it would be ample notice as to how the grain was held, and put them upon inquiry as to whether the receipt was still outstanding. Defendants belong to the latter class. They had a branch office at Omaha; they had a membership on the Omaha Grain Exchange, and dealt thereon through this membership. They cannot be heard to plead ignorance of the rules under which members operated."

While the case from which we have quoted deals more particularly with the knowledge imputable to a member of the Exchange from the fact of his membership, the under-

lying principle is, we think, the same with reference to a nonmember bank which had opportunities to acquire knowledge of the rules and customs of the Grain Exchange. While in the case of a member the existence of such knowledge would be presumed, and a member would not be heard to dispute it, in the case of an outside party dealing with a member of the Exchange it would become a question of fact, to be determined from the circumstances of the case, whether such knowledge existed, and in determining that fact it is proper to take into consideration such inferences as might reasonably be drawn indicative of such knowledge.

There is, it seems to us, abundant evidence in the record from the officers of the appellant bank themselves that the bank was constantly holding receipts issued upon bills of lading of the same import as those involved in the case at bar, as well as handling bills of lading on which the notation in question appeared, and there was sufficient proof along that line to warrant the court in inferring that the appellant's officers were fully informed of the rules of the Exchange reserving title in the seller until the grain was paid for and prohibiting the negotiation of bills of lading stamped with that notation. If other proof were wanting, there is the fact that the appellant at the very time it dealt with Richter was holding the receipts referred to in the notations upon his bills of lading, as collateral security upon the appellee's notes. The possession of these receipts was convincing proof that the bank knew and relied upon the Exchange rules protecting the seller of grain against the negotiation of bills of lading, because it treated the outstanding receipts as sufficient to show the real ownership of the grain and as valid collateral security.

The remaining proposition asserted by the appellee is that, in cooperating with Richter in negotiating the bills of lading through the bank, the appellant, which held the receipts issued thereon as collateral, in effect made possible the destruction of the security which it was in duty

bound to protect.   Appellant's counsel resist that proposi-
tion upon the ground that it would impose upon the bank
a degree of care incompatible with the transaction of its
routine business.   It is argued that it would be im-
practicable to delay the forwarding of drafts until the
bills of lading attached to them could be checked with all
the collateral in the bank to see whether receipts issued
thereon were held by the bank as collateral in its loan
department.   It does not seem to us that it would impose
too onerous a burden or create any undue delay for the
bank to list receipts issued upon bills of lading held by it
as collateral, with reference to the car number, and thus
enable the officers of the bank to know positively when
bills of lading were presented whether the bank held the
corresponding receipts.   But, in view of the foregoing
discussion, since the appellant bank was bound by its
knowledge of the rules of the Grain Exchange to refrain
from participating in the negotiations of any bill of lading
bearing the notation that a receipt had been issued, the
fact that it was the pledgee of the receipts issued upon the
particular bills of lading involved in this suit merely
makes more emphatic its duty in that respect and the
probability that it had knowledge of the rules and customs
of the grain trade.   Our conclusion as to the liability of
the appellant springs from the notice imparted by the
notation upon a bill of lading to any bank or other party
acquainted with its meaning, and is the same whether the
party thus notified might or might not chance to hold the
receipt referred to.

The appellant relies upon two contentions to defeat
the action.   One is that the bank acted as a mere agent
for Richter in the transaction, and therefore did not, and
was under no duty to, scrutinize the bills of lading; that
it was not a purchaser, but a mere forwarder, of the drafts
and bills of lading to the Chicago and St. Louis banks
through which the real purchasers acquired the grain.
The fact remains, nevertheless, that the appellant gave
Richter immediate credit for the amount of the drafts as

a deposit in his checking account and, by so doing, succeeded to all of Richter's title and rights to the extent, at least, of the amount that it advanced. It thereby associated itself in the unlawful disposition of the grain which might have been detected and prevented if it had given heed to the notice of the appellee's title appearing upon the face of the bills of lading. Assuming that the appellant acted as Richter's agent in the transaction, it does not follow that it would be relieved of liability because of that fact, if it had knowledge. "In accordance with the rule that an agent is liable for injury resulting from his misfeasance or malfeasance, an agent may be held liable in damages to third persons for conversion, unless he acts solely for his principal, by his direction, and without any knowledge, actual or constructive, of the wrongful conversion being committed by the principal." 2 C. J. 827, sec. 501.

Counsel for the appellant cite *Nebraska Hay & Grain Co. v. First Nat. Bank,* 78 Neb. 334, wherein the bank was held not liable for a forged bill of lading attached to a draft negotiated through the bank as collecting agent. In that case, however, nothing irregular or out of the usual course appeared upon the face of the bill of lading, and the decision was based upon the fact that the bank was without notice or knowledge of any wrongdoing.

Finally, it is contended by the appellant that, because the bills of lading were originally issued in Iowa and the cars were originally consigned from one point in Iowa to another point in Iowa, all subsequent transfers thereof are governed by the laws of that state. An Iowa statute is pleaded, to the effect that any alteration or addition to the bill after its issue without authority of the carrier shall be void, and it is argued that therefore the notation relating to the issuance of a receipt appearing upon the bills of lading under consideration was of no effect and imparted no notice. Counsel for the appellee maintain, however, that the subsequent assignments and transfers took place in Nebraska, and, since they constituted new

and independent contracts, they are governed by the laws of Nebraska, which do not prohibit or declare void such notations. In this, we think, the appellee's position is correct, and that the same rule that applies generally to contracts of indorsement of bills and notes, that the law of the place where the contract is made shall govern, is applicable here. 8 C. J. 100, sec. 173.

We are of the opinion that the judgment of the court below is the only one that could be justified under the evidence, and recommend that it be affirmed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.