HOLMQUIST ELEVATOR COMPANY, APPELLEE, v. OMAHA ELEVATOR COMPANY ET AL., APPELLANTS.

FILED JULY 13, 1923. No. 22451.

1. **Appeal:** ENTRY OF JUDGMENT WHERE FACTS ADMITTED. After all the testimony in the action had been introduced, the court discharged the jury and entered a judgment for the plaintiff upon the undisputed facts and admissions in the pleadings and in open court. *Held* that this was not prejudicial error, since under the evidence it would have been the duty of the court to direct a verdict for the plaintiff, if the jury had not been discharged.

2. **Sales:** GRAIN EXCHANGES. Sales of grain made upon the floor of the Omaha Grain Exchange by one member of the exchange to another member are governed by the rules of the grain exchange.

3. **Evidence** examined, and *held* to support the findings and judgment of the trial court.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*James C. Kinsler* and *George A. Keyser,* for appellants.

*Smith, Schall, Howell, Howard & Sheehan,* contra.

Heard before Morrissey, C. J., Letton and Dean, JJ., Blackledge and Colby, District Judges.

Letton, J.

Appellants were found by the trial court to be liable to the Holmquist Elevator Company, appellee, for the value of two cars of corn. A jury was impaneled and evidence taken. At the close of the testimony the court discharged the jury and entered a judgment for the value of the corn in favor of the plaintiff. This action of the court is complained of; but upon the undisputed facts the court had the right to determine the question as one of law. The real controversy is as to whether the con- clusion drawn is justified by the undisputed and admitted facts.

On August 3, 1917, the Holmquist Elevator Company received two cars of corn and sold them on the floor of the Omaha Grain Exchange to one William R. Richter, doing business as United States Commission Company, also a dealer on the exchange.

Section 9 of rule VI of the Omaha Grain Exchange, so far as material here, is as follows:

"On all sales of cash grain to go to elevators, mills or warehouses in this market, made on the floor of the exchange, on the 'Call' board, or by private sale, in ac- cordance with the rules and regulations of the exchange, the buyer shall order the grain to the elevator, the ownership of such grain to remain in the seller until the grain is paid for. On such sales payment shall be made by the purchaser before 2 o'clock p. m. of the day follow- ing the day on which the grain is unloaded at the elevator. * * * No grain shall be paid for until un- loaded, or at the expiration of 144 hours from 2 o'clock p. m. of the date of the sale of the grain."

The custom among dealers upon the Omaha Grain Exchange is that, when a car of grain is consigned to them at Omaha, a bill of lading is sent with a draft at- tached. As soon as the car arrives the inspection de- partment of the exchange procures a sample of the

grain in the car and fixes the grade. A sale is made, based upon the grade and sample, during the first session of the exchange following the receipt of the sample. After the sale is made the bills of lading are turned over to the buyer for the purpose of procuring the moving of the cars to the elevators or industries for which they have been bought. The payment for the grain in the car is not required until after it is weighed.

On August 3, 1917, the cars were sold to Richter. They were ordered by him to the Omaha Elevator Company to be weighed. Richter became insolvent before the grain was paid for.

The Albers Commission Company answered, alleging that on August 7 and 8, 1917, it bought the two cars from Richter, and received from him the bills of lading for them; that a rule of the Omaha Grain Exchange provides:

"Where a bill of lading is transferred and the party receiving the same issues and delivers to the person surrendering the bill of lading a receipt therefor, stating that the title to the grain covered by said bill of lading shall remain in the party holding said receipt until the same is fully paid for, then the person issuing such receipt is hereby prohibited from accepting or receiving advances on said bill of lading, or negotiating the same, so long as the receipt therefor is outstanding. Where a bill of lading is transferred and receipt issued therefor as above provided, the party transferring the same shall plainly stamp or write across the face of said bill of lading the words: Receipt issued for this bill of lading under rules of Omaha Grain Exchange to (name of holder of receipt)."

That neither of the bills of lading bore any stamp as provided in this rule; that defendant had no notice of any kind that the plaintiff herein claimed any interest in the cars of corn, and that it purchased the same without notice that plaintiff had any such interest; that at the time of the purchase Richter was indebted to de-

fendant in an amount much greater than the value of the grain bought, and the same was purchased to apply on the account of Ritcher, and the purchase price credited in the regular course of business to him. It denies that the cars were sold on the floor of the exchange, and were known as floor sales.

The evidence establishes that the grain was sold upon the floor of the exchange, and that neither bill of lading bore any stamp showing that a receipt had been issued.

The question to be determined is: Did the Albers Commission Company in fact purchase and pay for the grain without notice of the rights of the plaintiff? As between plaintiff and Ritcher, under section 9, the title remained in plaintiff until after the grain was weighed and paid for. The rule that appellants rely upon, to wit, "Where a bill of lading is transferred and the party receiving the same issues and delivers to the person surrendering the bill of lading a receipt therefor, stating that the title to the grain covered by said bill of lading shall remain in the party holding said receipt until the same is fully paid for," and the fact that such receipt has been given shall be stamped upon each bill of lading, is not mandatory, but only permissive. The seller is not obliged to take a receipt and have the bill of lading stamped, but if he does so he can thereby protect himself from the risk of the sale and transfer of the bills of lading and the grain to an innocent purchaser. The imprinting of such a stamp upon the bills of lading gives actual notice to any person receiving the same that the title to the grain still remains in the original holder of the bill. Without such stamp the bill of lading furnishes no notice to a subsequent puchaser. The stamp not appearing upon either of these bills of lading, they conveyed no notice to the Albers Commission Company that the title had not passed to Richter.

It is not clear from the record when the grain was unloaded; one car seems to have been unloaded on August 13, and the other one afterwards. Richter de-

livered the bills of lading to the Albers Commission Company, one on August 7, and one on August 8. The grain had not been weighed or paid for. Under rule 9, the ownership remained in the seller at that time. The Albers Commission Company was in the habit of dealing with Richter and carried a running account with him. In June, 1917, it loaned to Richter the sum of $5,000 and took his demand promissory note for the same. At the time the alleged sale was made the open book account of Richter showed that he was indebted to the Albers Commission Company in the sum of $4,500, but at the same time the company held his demand note of $5,000 covering the same debt, for which note he had never received credit, and part of the account seems to be a claim for damages. No one testifies as to any conversation which took place at the time of the alleged sale. The note was not delivered to Richter when the bills of lading were transferred. The bookkeeper for the Albers Commission Company testifies that he received two account of sale slips showing the purchase of the corn, and he credited the book account with the market value of the corn on the respective dates. The account of sale slips show that the grain was sold by Richter at a much higher price. At either figure the value of the grain much exceeded the amount due the Albers company, even if the promissory note is not taken into consideration.

It also appears that when Mr. Holmquist spoke to Mr. Albers on August 13, with respect to payment for these cars, Albers said there was a question about it, but he thought they would be willing to settle on the basis of the market. Holmquist told Albers he might be willing to accept either the corn or the value on that day. One car had not been unloaded. "It was understood that we had not been paid for the corn for the reason that it had not been weighed." The next day Albers refused to pay for the cars, saying there had been advances made which he did not know about the day before.

The bills of lading contain no notation of "shippers

weights," so that there can be no room for doubt that the grain was sold on "Omaha weights."

It is no doubt true, as appellants point out, that the lawful holder of bills of lading, not bearing the stamp showing the grain had not been paid for, could order a railroad company to forward the cars containing it to another market, but we fail to see what bearing this has upon the question here. If the Albers Commission Company was not a *bona fide* purchaser of the grain, under the facts in evidence the title would remain in plaintiff. wherever the cars might be.

Upon the undisputed facts, we are convinced that the title did not pass to Richter, that the Albers Commission Company is not an innocent purchaser for value, and, not having paid Richter for the grain, its retention after demand constituted a conversion and it is liable for its value.

The judgment of the district court is

AFFIRMED.