J. F. TWAMLEY, SON & COMPANY, APPELLEE, V. CHICAGO, GREAT WESTERN RAILROAD COMPANY, APPELLANT.

FILED DECEMBER 7, 1923.    No. 22597.

1. Statutes: PLEADING AND PROOF. A defendant who bases his defense to an action on the statutes of another state must allege, and unless admitted by his adversary must prove, the statutory provision relied on.

2. Carriers: BILLS OF LADING: ALTERATIONS. A provision in a bill of lading, that any alteration or addition thereto shall be ineffectual unless indorsed thereon and signed by the agent of the carrier, has reference to the terms and conditions of the contract for transportation, and has no reference to an indorsement by the consignee for the purpose of transferring the title to the bill to another.

3. ———: MEMBERSHIP IN GRAIN EXCHANGE. Though the articles of incorporation of a railway company do not authorize it to engage in the buying and selling of grain, it is not unlawful for it to hold a membership in a grain exchange, when such membership enables it to ascertain when grain is to be transported to other markets, to come in contact with prospective shippers, and to solicit their shipments of grain over its line of railway. Under such circumstances, the holding of a membership in a grain exchange is properly incident to the business of a common carrier.

4. ———: BILLS OF LADING: INDORSEMENT: TITLE. An order bill of lading for a car of grain, indorsed in blank by the consignee and stamped on its face, "Receipt issued for this bill of lading under rules of Omaha Grain Exchange to (name of consignee),"

*held* to charge the carrier issuing such bill of lading, and which is a member of the grain exchange and had knowledge of the general nature of the business transacted by such exchange, with notice that, as provided in such rules of the exchange, title to the grain remained in the holder of the receipt until he was paid therefor.

APPEAL from the district court for Douglas county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Brown, Baxter & Van Dusen,* for appellant.

*Smith, Schall, Howell, Howard & Sheehan, contra.*

Heard before MORRISSEY, C. J., ROSE and GOOD, JJ., REDICK, District Judge.

GOOD, J.

Plaintiff recovered a judgment against defendant for the conversion by it of a carload of corn. Defendant has appealed.

The facts from which this controversy arises are not in dispute, and, so far as necessary to an understanding of the questions involved, are as follows: Plaintiff delivered to defendant at Bentley, Iowa, for shipment to itself at Council Bluffs, Iowa, a car of corn and received therefor an order bill of lading from defendant. Afterwards plaintiff sold said car of corn to William Richter, doing business under the trade name of U. S. Commission Company. The sale was made on the floor of the Omaha Grain Exchange as cash grain upon Omaha weights and grades and pursuant to the rules and regulations of said exchange. Said rules required Richter to order said grain to an elevator in Omaha or Council Bluffs for the purpose of being weighed and graded. Said sale was made upon the condition that title to said car of corn should remain in plaintiff until paid for, and the s.   ·.   .uld not be shipped from the elevator in Omaha or C   .cil Bluffs until paid for. The conditional sale was in writing, as required by the rules of said exchange. Plaintiff stamped across the face of the bill of lading the following: "Receipt issued for this bill of lad-

ing under rules of Omaha Grain Exchange to J. F. Twamley, Son & Company," and indorsed on the back thereof the name of J. F. Twamley, Son & Company, and delivered the same to Richter. Thereafter the defendant, at the request of Richter, took up and canceled said bill of lading and issued to him, under the name of U. S. Commission Company, in lieu thereof, a new bill of lading, showing full ownership in said Richter, in and to said car of corn, and shipped the same to Peoria, Illinois, and thereafter Richter sold the corn and converted the proceeds to his own use. Richter never paid plaintiff for said corn. Plaintiff, defendant and Richter were, at the time, all members of the Omaha Grain Exchange.

The rules of said grain exchange provide in part as follows: "On all sales of cash grain to go to elevators, mills or warehouses in this market, made on the floor of the exchange, on the 'Call' board, or by private sale, in accordance with the rules and regulations of the exchange, *the buyer shall order the grain to the elevator*, the ownership of such grain to remain in the seller until the grain is paid for. Where a bill of lading is transferred and the party receiving the same issues and delivers to the person surrendering the bill of lading a receipt therefor, stating that the title to the grain covered by said bill of lading shall remain in the party holding said receipt until the same is fully paid for, then the person issuing such receipt is hereby prohibited from accepting or receiving advances on said bill of lading, or negotiating the same, so long as the receipt therefor is outstanding. Where a bill of lading is transferred and receipt issued therefor as above provided, the party transferring the same shall plainly stamp or write across the face of said bill of lading the words 'Receipt issued for this bill of lading under rules of Omaha Grain Exchange to (name of holder of receipt).'"

Plaintiff's theory is that the words, "Receipt issued for this bill of lading under rules of Omaha Grain Exchange to J. F. Twamley, Son & Company," stamped upon the bill of lading, were notice to any member of said grain exchange,

accepting or dealing with said bill of lading, that title to the corn, until paid for, remained in the plaintiff, and that defendant, by taking up and canceling said bill of lading and issuing, in lieu thereof, a bill of lading to Richter, under the name of U. S. Commission Company, enabled the latter to wrongfully sell the corn and appropriate the proceeds to his own use; that, without the act of the defendant in thus issuing a new bill of lading, Richter would have been unable to gain possession of the corn and convert it to his own use, and that therefore defendant is jointly liable with Richter for conversion of the grain.

Defendant contends that plaintiff, by indorsing in blank and delivering to Richter the order bill of lading, thereby invested him with an apparent ownership of the corn; that plaintiff's action in so indorsing and delivering the bill of lading, when there was only a conditional sale of the corn, was negligent and made possible the fraud of Richter; that defendant performed its contract by delivering the corn to the bearer of the bill of lading so indorsed.

It seems quite clear that the correctness of this position must be determined by the effect that should be given the words stamped on the bill of lading. If, under the circumstances disclosed by the record, the words, "Receipt issued for this bill of lading under rules of Omaha Grain Exchange to J. F. Twamley, Son & Company," are sufficient to charge defendant with notice that the corn was sold under the rules of said exchange, then it would follow that defendant had notice that the title to the corn remained in plaintiff until paid for, or until the receipt was surrendered. If defendant, with such notice, took up the bill of lading and issued a new one to Richter under the name of U. S. Commission Company, thereby investing him with apparent ownership of the corn, and transported the same to another market where Richter sold the corn and received and appropriated the proceeds, and failed to pay plaintiff for the corn, defendant would thereby render itself liable to plaintiff in this action.

Defendant argues that the words stamped on the bill of lading are void and of no effect because in contravention of

the statutes of Iowa and contrary to the provisions of section 10 of the bill of lading. While defendant's answer contains allegations as to the provisions of the Iowa statute, they were not supported by any evidence and were denied in plaintiff's reply. The effect of the Iowa statute cannot be considered, because its provisions are neither admitted nor proved.

Section 10 of the bill of lading is as follows: "Any alteration, addition, or erasure, in this bill of lading which shall be made without an indorsement thereof hereon, signed by the agent of the carrier issuing this bill of lading, shall be without effect, and this bill of lading shall be enforceable according to its original tenor."

The design and purpose of said section is to prevent any change in the terms and conditions of a contract of carriage, unless such change is indorsed on the contract and attested by the signature of the carrier's agent. It was plainly designed to require the whole contract for transportation to be in writing and attested in such a manner as to leave none of the terms thereof open to dispute or subject to proof by parol evidence. It was not the purpose of said section to require an indorsement by the consignee, for the purpose of transferring the bill of lading to another, to be attested by the signature of the carrier's agent. The words stamped on the bill of lading do not alter or change any of the terms or conditions of the contract between the carrier and the consignor. They can only affect the contract of indorsement so that the indorsee would not become invested with the title but only a right to possession for a specific purpose, viz., to have the corn sent to a terminal elevator for weighing and grading, and there to remain until paid for. If said section 10 would make a restricted indorsement invalid unless attested by the signature of the carrier's agent, then it would likewise prevent any transfer of the bill of lading by the consignee's indorsement in blank, unless so attested. It is quite clear to us that section 10 does not make the words stamped on the bill of lad-

ing invalid and of no effect because not attested with the signature of the carrier's agent.

While defendant admits that it has held a membership in the Omaha Grain Exchange since its organization, and that members who are engaged in the grain business on such exchange are required to take notice of the rules thereof, it contends that, because it is not dealing in grain, either buying or selling, and because the holding of such a membership is in violation of the articles of incorporation of defendant, it is not required, as a matter of law, to take notice of the rules of the exchange. Defendant asserts that the holding of a membership in the Omaha Grain Exchange is *ultra vires;* that the holding of such membership confers no rights upon the defendant and entails no obligations. We are unwilling to concede the soundness of this contention. While the railroad company may not be authorized by its articles of incorporation to engage in the buying and selling of grain, it does not follow that it may not hold a membership in an exchange for the purpose of facilitating and aiding it in carrying on the business of a carrier. Carriers may, and do, own grain elevators for the purpose of storage and to enable them to obtain and handle grain for transportation. We think they are authorized to do anything that is lawful and necessarily incident to carrying on the business of a carrier. By holding a membership in the exchange, a carrier is enabled to ascertain when grain is to be transported to other markets, to come in contact with shippers, and to solicit the consignments of grain over its line of railway. We are of opinion that the holding of such membership, under the circumstances, was not prohibited by its articles of incorporation and was not unlawful; that it was proper and legitimate and in furtherance of its lawful business.

Under the facts established by the record, the rules announced by this court in *Holmquist Elevator Co. v. Omaha Elevator Co.,* 110 Neb. 655, and in *Standard Grain Co. v. State Bank,* 106 Neb. 73, must control the decision in this case. In the former case, it was held; "Sales of grain made

upon the floor of the Omaha Grain Exchange by one member of the exchange to another member are governed by the rules of the grain exchange." In that case, the bill of lading did not bear the notation, "Receipt issued for this bill of lading under rules of Omaha Grain Exchange to (name of holder of receipt)," but the indorsee of the bill of lading was held to have notice that the title to the grain remained in the seller until paid for, as provided by the rules of the exchange.

In *Standard Grain Co. v. State Bank, supra,* it was held: "Under rules of the Omaha Grain Exchange, when a car of grain is sold and the bill of lading is assigned, the buyer issues a receipt stipulating that title shall remain in the seller until the grain is paid for, and a notation of the issuance of the receipt is stamped upon the bill of lading, thereby giving notice to Exchange members that negotiation of the bill of lading is prohibited until the seller is paid. *Held,* that a bank to which a bill of lading bearing such notation is indorsed, with accompanying draft, for deposit and credit, and through which the said paper is negotiated and the grain wrongfully sold, is liable to the owner for conversion, if knowledge on the bank's part of the meaning of said notation and of the exchange rules is directly shown or can reasonably be inferred from its previous experience and dealings." And it was also determined in that case that the stamped notation on the bill of lading was notice to members of the exchange that title to the grain represented by the bill of lading was reserved in the original consignee, and, further, that the bank cashing the draft with such bill of lading attached, although not a member of the exchange, by reason of its familiarity with the dealings between the members on the exchange, was required to take notice that title did not pass to the indorsee of the bill of lading bearing the stamped notation.

In *Rainbolt v. Lamson Bros.,* 259 Fed. 546, the same rule of the Omaha Grain Exchange was involved. It was there held: "A bill of lading for a car of grain, stamped on its face, 'Receipt issued for this bill of lading under rules of

Omaha Grain Exchange,' *held* to charge a transferee, who was a member of the exchange, with notice that, as provided in such rules, title to the grain remained in the holder of the receipt until he was paid therefor."

It is a matter of common knowledge that defendant is almost daily transporting grains to and from the Omaha market and that a large portion of such grain is handled and sold on the floor of the Omaha Grain Exchange. The defendant must necessarily have been familiar with the general nature and methods of the business transacted by the grain exchange.

Under the facts disclosed by the record and the rules announced in the authorities cited, it must be held that the notation on the bill of lading conveyed notice to the defendant that title to the grain had not passed to Richter, under the name of the U. S. Commission Company, and that the defendant, by taking such bill of lading and issuing to Richter, in lieu thereof, a new bill of lading, which would indicate that he was the absolute owner thereof, and which enabled him to dispose of the grain and appropriate the proceeds, is put in the position of aiding him in defrauding plaintiff. It follows that defendant is liable to plaintiff for conversion of the corn.

The judgment of the district court is

AFFIRMED.