## STATE OF NEBRASKA V. OMAHA NATIONAL BANK ET AL.

FILED DECEMBER 19, 1899.   No. 10,586.

59  483
f59  473

59  483
s60  234
60  237

1. Appropriation Act: SINKING FUND: DUTY OF TREASURER. An appropriation act which authorizes the state treasurer to reimburse the sinking fund from the general fund is, in effect, a command to such treasurer to make such entries in his books as will show a transfer of public moneys from one fund to another.

2. ———: ———: WARRANT TO TREASURER. Such act does not authorize the issuance of a warrant evidencing an indebtedness to the treasurer in his individual capacity.

3. ———: ———: ———: TRUST. Such a warrant is not a state obligation, and the person to whom it is payable, being a mere trustee, possesses no salable interest therein.

4. Conversion: DEFINITION. Every act of control or dominion over property without the owner's authority, and in disregard of his rights, is, in contemplation of law, a conversion. It is not the advantage accruing to the defendants from the act, nor the motives inducing it, but the substantial injury inflicted on the plaintiff which, ordinarily, constitutes the gravamen of the action.

5. State Treasurer: PURCHASER OF WARRANT: PAYMENT. The state treasurer is without authority to pay any part of the public money to one claiming to be the owner, by purchase of a warrant drawn on the general fund "to reimburse the sinking fund."

6. ———: ———: ———: CONVERSION. The payment by the state treasurer of public moneys to one claiming to be the owner, by purchase, of such a warrant, for the purpose of satisfying the same, is a conversion; and the receiving of such money by the person to whom it is paid is also a conversion.

7. Trover: PROPERTY. Trover may be maintained for every species of personal property which is the subject of private ownership, including money, bank bills, notes and bonds.

8. ———: MONEY: BILLS: LIABILITY OF PURCHASER. Trover does not lie to recover money or negotiable instruments in the hands of a bona fide holder; but one is not an innocent holder when he knew to whom the money or mercantile paper belonged at the time he received it.

9. ———: STATE WARRANTS: RECITALS: NOTICE. Whether or not certain recitals appearing upon the face of a state warrant impute notice to parties handling or dealing with it, are proper to be submitted to the jury.

10. **Review: BRIEFS.** A party can not, by filing a brief after the sub-
mission of the cause, bring to the notice of the court points not
suggested either in the original briefs or on the oral argument.

ERROR from the district court of Douglas county.
Tried below before BAKER, J.   *Reversed.*

The facts are stated in the opinion.

*C. J. Smyth, Attorney General,* and *W. D. Oldham, Deputy
Attorney General,* for the state:

Before final submission plaintiff moved to dismiss the
case without prejudice, and its motion should have been
sustained. See Code of Civil Procedure, sec. 430; *Zittle
v. Schlesinger,* 46 Nebr., 844; *Lawrence v. Schreve,* 26 Mo.,
492; *Wood v. Nortman,* 85 Mo., 298; *Harris v. Beam,* 46
Ia., 118; *Mullen v. Peck,* 57 Ia., 430; *Morrisey v. Chicago
& N. W. R. Co.,* 80 Ia., 314; *Vertrees v. Newport News Co.,*
95 Ky., 314.

The peremptory instruction to the jury to return a
verdict for defendants was erroneous. Under the facts
pleaded and proved, Bartley was guilty of a conversion
of the money paid on the check, and Millard and the
bank were participants in every act constituting the con-
version. See *Bartley v. State,* 53 Nebr., 310; *Sharp v.
Parks,* 48 Ill., 511; *Hoffman v. Carow,* 20 Wend. [N. Y.],
21; *Cerkel v. Waterman,* 63 Cal., 34; *Swim v. Wilson,* 90
Cal., 126; *Robinson v. Skipworth,* 23 Ind., 311; *Kearney v.
Clutton,* 59 N. W. Rep. [Mich.], 419; *Hill v. Campbell
Commission Co.,* 54 Nebr., 59; *Cook v. Monroe,* 45 Nebr.,
349; *Perkins v. Smith,* 1 Wilson [Eng.], 328; *Stephens v.
Elwall,* 4 M. & S. [Eng.], 259; *Tugman v. Hopkins,* 4 M.
& G. [Eng.], 389; *Everett v. Coffin,* 6 Wend. [N. Y.], 603;
*Mead v. Jack,* 12 Daly [N. Y.], 65; *McPartland v. Read,*
11 Allen [Mass.], 231; *McCombie v. Davies,* 6 East T. R.
[Eng.], 538; *Edgerly v. Whalan,* 106 Mass., 307; *Spraights
v. Hawley,* 39 N. Y., 441; *Alexander v. Swackhamer,* 105
Ind., 81.

Defendants had constructive knowledge of Bartley's lack of authority, and are chargeable the same as if they had actual knowledge. One who is bound to inquire is charged with the knowledge which he would have acquired had he made inquiry. See *Knapp v. Bailey*, 79 Me., 195; *Beard v. Milmine*, 88 Fed. Rep., 868; *Bartley v. State*, 53 Nebr., 310.

*John L. Webster, contra:*

.The transaction does not involve the elements of conversion. See *Stough v. Stefani*, 19 Nebr., 468; *Nichols v. Newsom*, 2 Murphy [N. Car.], 303; *Badger v. Hatch*, 71 Me., 565; *Spencer. v. Blackman*, 9 Wend. [N. Y.], 168; *Ferguson v. Clifford*, 37 N. H., 101; *Laverty v. Snethen*, 68 N. Y., 524; *Bristol v. Burt*, 7 Johns. [N. Y.], 258; *Spooner v. Holmes*, 102 Mass., 506.

The rule in larceny cases does not apply to money and negotiable paper. See *Spooner v. Holmes*, 102 Mass., 503; *Goodman v. Simonds*, 20 How. [U. S.], 343; *Evertson v. National Bank*, 66 N. Y., 14; *Jones v. Nellis*, 41 Ill., 482; *Shipley v. Carroll*, 45 Ill., 285; *Burson v. Huntington*, 21 Mich., 415; *Olmstead v. Winsted Bank*, 32 Conn., 278; *King v. Doane*, 139 U. S., 166; *Swift v. Smith*, 102 U. S., 442; *Hotchkiss v. National Banks*, 21 Wall. [U. S.], 354; *Hopkins v. Withrow*, 42 Ill. App., 584; *Wilson v. Denton*, 82 Tex., 531; *First Nat. Bank of Cameron v. Stanley*, 46 Mo. App., 440; *Richards v. Monroe*, 85 Ia., 359; *Indiana & I. C. R. Co. v. Sprague*, 103 U. S., 756.

The contention of the attorney general, that the Omaha National Bank had constructive notice of Bartley's want of authority to pay the warrant, and that such notice is equivalent to actual knowledge, is unsound. See *Speer v. Board of County Commissioners*, 88 Fed. Rep., 749; *Wall v. County of Monroe*, 103 U. S., 74; *Thompson v. Searcy County*, 12 U. S. App., 627; *Board of County Commissioners v. Sherwood*, 27 U. S. App., 458.

The bank is not liable for the misapplication of the state funds by the treasurer, as there is no proof that

the bank was in fact aware that the payment of the warrant was unlawful, and was not a participant in the transaction knowing it to be unlawful. See *Fifth Nat. Bank v. Village of Hyde Park*, 101 Ill., 595; *Duckett v. National Mechanics Bank*, 86 Md., 400; *Munnerlyn v. Augusta Savings Bank*, 88 Ga., 333; *State Nat. Bank v. Reilly*, 124 Ill., 464; *Freeholders v. Newark Nat. Bank*, 48 N. J. Eq., 51; *Goodwin v. American Nat. Bank*, 48 Conn., 550; *Howard v. Deposit Bank of Owensboro*, 80 Ky., 496; *Walker v. Manhattan Bank*, 25 Fed. Rep., 247; *State Nat. Bank v. Dodge*, 124 U. S., 333; *United States v. American Exchange Nat. Bank*, 70 Fed. Rep., 232; *Wells, Fargo & Co. v. United States*, 45 Fed. Rep., 337; *National City Bank v. Westcott*, 118 N. Y., 468; *National Park Bank v. Seaboard Bank*, 114 N. Y., 28; *Herrick v. Gallagher*, 60 Barb. [N. Y.], 566; *Buller v. Harrison*, 2 Cowper [Eng.], 568; *Mowatt v. McClelan*, 1 Wend. [N. Y.], 173; *State v. Flint & P. M. R. Co.*, 89 Mich., 481; *United States v. Dalles Military Road Co.*, 41 Fed. Rep., 493; *United States v. McLaughlin*, 30 Fed. Rep., 147; *Commonwealth v. Heirs of Andre*, 3 Pick. [Mass.], 224; *Attorney General v. Ruggles*, 59 Mich., 124.

The court did not commit error in overruling the plaintiff's motion to dismiss without prejudice, under the facts in this case. See *Aultman v. Reams*, 9 Nebr., 487; *Omaha & R. V. R. Co. v. Hall*, 33 Nebr., 229; *Standiford v. Green*, 54 Nebr., 10; *State v. Scott*, 22 Nebr., 628; *Beaumont v. Herrick*, 24 O. St., 446; *Sheedy v. McMurtry*, 44 Nebr., 499; *Huntington v. Forkson*, 7 Hill [N. Y.], 195; *Glass Co. v. Taylor*, 99 Ky., 24; *Beals v. Western Union Telegraph Co.*, 53 Nebr., 601; *Dunn v. Wolf*, 81 Ia., 688; *Toof v. Foley*, 87 Ia., 8; *Ætna Life Ins. Co. v. Board of County Commissioners*, 49 U. S. App., 122; *McArthur v. Schultz*, 78 Ia., 364.

*R. S. Hall* and *Connell & Ives*, also for defendants in error.

SULLIVAN, J.

The state of Nebraska brought this action in the district court of Douglas county to recover from the Omaha

National Bank and J. H. Millard, its president, the sum of $201,884.05. The basis of the claim was an alleged conversion by the defendants of certain money belonging to the plaintiff. A jury, impaneled to try the issues, found, in obedience to a peremptory direction from the court, that the state had no cause of action. A motion for a new trial was denied, and, judgment having been rendered on the verdict, the attorney general, by this proceeding in error, has brought the record here for review.

The controversy arises out of the following facts: The defendant bank was a state depository, and as such had in its custody on January 2, 1897, state funds amounting to more than $200,000. The legislature of 1895 passed an appropriation bill, entitled "An act making appropriation for current expenses of the state government for the years ending March 31, 1896, and March 31, 1897, and to pay the miscellaneous items of indebtedness owing by the state of Nebraska." See Session Laws, 1895, p. 386, ch. 88. Among the items of appropriation contained in the first section of the act is the following: "For state sinking fund, one hundred eighty thousand and one hundred and one and seventy-five one-hundredths ($180,101.75) dollars, to reimburse said fund for same amount tied up in Capital National Bank." The bill was approved by the governor April 10, 1895, and the same day J. S. Bartley, the state treasurer, filed with the auditor of public accounts a claim for the entire sum appropriated to reimburse the sinking fund. This account having been examined and adjusted by the auditor and approved by the secretary of state, a warrant in the following form was made out and delivered to the claimant:

"$180,101.75.    STATE OF NEBRASKA.    No. 95241.
"OFFICE OF AUDITOR OF PUBLIC ACCOUNTS,
"LINCOLN, NEB., Apr. 10, 1895.
"Treasurer of Nebraska,
"Pay to J. S. Bartley or order one hundred eighty thousand one hundred one and 75-100 dollars, for to reim-

burse state sinking fund, in accordance with legislative appropriation approved Apr. 10, 1895, and charge general fund.

"Countersigned:                              EUGENE MOORE,
     "J. S. BARTLEY,          *Auditor of Public Accounts.*
          "*State Treasurer.*     P. O. HEDLUND, *Deputy.*
     "————, *Deputy.*"

On left hand margin: "Treasury Warrant."

Upon the back of this warrant appears the following indorsements: "Presented and not paid for want. of funds, and registered for payment Apr. 10, 1895. Number 27932.  J. S. Bartley, State Treasurer, Lincoln, Nebraska." This further indorsement appears: "J. S. Bartley.  J. H. Millard, Pt."

This warrant, it is asserted by the defendants, was sold by Bartley to the Chemical National Bank of New York. The state does not deny the assertion, but, on the contrary, by implication, concedes its truth.  At any rate, it is certain that the New York bank, claiming to be the owner of the instrument, forwarded it for collection to the defendant bank in October or November, 1896.  On January 2, 1897, Bartley called at the Omaha National Bank, and, for the purpose of paying the warrant, drew his check, as treasurer, upon the funds of the state on deposit in said bank.  The amount of the check was $201,884.05; it was made payable "to the order of J. H. Millard, Pt.," and was delivered to the payee, who thereupon surrendered the warrant to Bartley, and caused the state's money, to the amount of the check, to be turned over to the Chemical National Bank of New York and the Exchange Bank of Atkinson.  These are the salient facts, and we proceed now to inquire whether they show a right of recovery in the state.  Whether the appropriation to reimburse the sinking fund was legislation fairly embraced within the title of the act may well be doubted; but we pass that question by, as its determination is not necessary to a decision of the case.  The warrant under consideration was issued to reimburse the sinking fund

— to transfer the state's money from one fund to another. It was a direction to Bartley to take money out of the general fund and put into the sinking fund. It declared on its face, in unequivocal terms, the purpose of its existence. No one could possibly be deceived by it. It would not suggest to an intending purchaser, however slow of apprehension he might be, the thought that the state was indebted to Bartley, and that the money directed to be paid was for his individual use. If the warrant was of any validity at all, it was, in substance, a command by the state to its treasurer to make certain entries in the books of his office. The warrant was neither actually nor apparently a state obligation. Bartley never had a salable interest in it, or the semblance of such an interest; and in the hands of the Chemical National Bank and in the hands of the Omaha National Bank it was absolutely null and void. Discussing this same question NORVAL, J., in *Bartley v. State*, 53 Nebr., 310, said: "The warrant did not belong to him [Bartley], notwithstanding it was drawn payable to himself in his individual capacity, but he received it officially in trust for the state, for and on behalf of the state sinking fund, as he well knew. The title to the warrant never vested in him, and he could not transfer to another by indorsement that which he never possessed. He could not divest the title of the state in the warrant by the sale thereof to the Chemical National Bank, since he possessed no power to sell or negotiate the instrument. Nor was the bank 'an innocent purchaser' within the meaning of that term as applied to commercial paper, inasmuch as the warrant disclosed on its face the purpose and object for which it was drawn, and the bank was bound to know at its peril that the defendant had no title to the instrument."

We come now to the question of conversion. The substance of the transaction between the defendants and Bartley at the Omaha National Bank of January 2, 1897, was, according to the doctrine of the last mentioned case,

the taking by the defendants of the state's money from the hands of Bartley and delivering it to the New York and Atkinson banks. As the state was not indebted to either of these banks, and as the treasurer had no authority to turn over to them any part of the public funds, the payment and receipt of the money on account of the sinking fund warrant were illegal acts, the performance of which resulted in a loss to the state of over $200,000. That the transaction amounted to a technical conversion and rendered the New York and Atkinson banks liable to the state for the money received by them, does not seem to be seriously disputed; but the contention of the defendants is that they acted in the matter as innocent agents; that they committed no conscious wrong, and that, therefore, the law, in its charity, acquits them of blame. The effect to be given to the intention of the defendant in determining whether he has been guilty of a conversion, is a point upon which the authorities appear to be in irreconcilable conflict. Some cases assert, without qualification or limitation, that the intent of the wrong-doer is altogether immaterial, while others declare in general terms that innocence of intent relieves him from responsibility for what would, under other circumstances, be an actionable wrong. The generally accepted doctrine, however, is that every act of control or dominion over property without the owner's authority, and in disregard and violation of his rights, is, in contemplation of law, a conversion. It is not the advantage accruing to the defendant from the act, nor the motives inducing it, but the substantial injury inflicted on the plaintiff which, ordinarily, constitutes the gravamen of the action. An early expression of this view is found in a suit for conversion brought against a clerk who had received goods from his master's agent and had sent them abroad to his master, in ignorance of the fact that they were the plaintiff's property. Lord Ellenborough, delivering judgment in favor of the owner of the goods, said: "The only question is whether this is a conversion

in the clerk, which undoubtedly was so in the master. The clerk acted under an unavoidable ignorance and for his master's benefit when he sent the goods to his master; but nevertheless his act may amount to a conversion; for a person is guilty of a conversion who intermeddles with my property and disposes of it; and it is no answer that he acted under authority from another—who had himself no authority to dispose of it.  And the court is governed by the principle of law, and not by the hardship of any particular case.  For what can be more hard than the common case in trespass, where a servant has done some act in assertion of his master's right, that he shall be liable, not only jointly with his master, but if his master cannot satisfy it, for every penny of the whole damage."   See *Stephens v. Elwall,* 4 Maule &. S. [Eng.], 259.   That the doctrine thus declared is the law of this state is settled by *Hill v. Campbell Commission Co.,* 54 Nebr., 59, and *Cook v. Monroe,* 45 Nebr., 349.

But it is said by counsel for defendants that the Omaha National Bank was a state depository, and that there can be no liability, because it was the duty of the bank to pay out the state's money on checks signed by Bartley in his official character.  This is true.  It is conceded that the custodian of a trust fund is not liable for the loss of money disbursed by him in good faith on the trustee's order; but what relevancy has that proposition to the case before us?  It is not sought here to charge the defendant bank with any wrongful conduct in connection with its office of custodian of public moneys.  No violation of duty in that respect is alleged against it. The unlawful act upon which this suit is grounded is not the payment of the money on Bartley's check, but the receiving of it by the defendants for the use and benefit of the Chemical National Bank.  When the Omaha bank, acting as a collecting agent, received the state's money and turned it over to its principal, it did an act which, according to the overwhelming weight of authority, amounted to a conversion.

It is, nevertheless, in the brief of counsel for defendants, earnestly insisted that there can be no recovery in this case, because the rule in regard to the conversion of chattels is not applicable to money and negotiable obligations. That trover may be maintained for every species of property which is the subject of private ownership, including money, bank bills, notes and bonds, is a proposition that has been established by numerous adjudications. See *Moody v. Keener*, 7 Port. [Ala.], 218; *Davis v. Funk*, 39 Pa. St., 243; *Stone v. Clough*, 41 N. H., 290; *Otisfield v. Mayberry*, 63 Mo., 197. The law, however, seems to be that neither money nor mercantile instruments in the hands of innocent holders are subject to the rules governing other kinds of property. They do not stand on the same footing as chattels. Possession as to them is assurance of title and right of disposition. They are intended to pass quickly from hand to hand, and the policy of the law is to faciliate their circulation by dispensing with all inquiry as to whether the putative owner is in fact possessed of the title. But the distinction between money and other forms of property is not material in this case. The money in question was earmarked. It was known to be the state's money when the defendants received it. They knew it was the state's money when they turned it over to the Chemical National Bank, and there is, therefore, no reason why they should not be held to the same measure of liability as though they had handled chattels belonging to the state. In the case of *Cook v. Monroe*, *supra*, a recovery was permitted, although the defendant was ignorant of the fact that he was dealing with money of the plaintiff. A *fortiori*, should there be a recovery under circumstances of this case, for defendants not only knew that they were dealing with the state's money, but they were also, in all probability, aware that the sinking fund warrant did not belong to the Chemical National Bank, and was incapable of being held in private ownership. The most casual inspection of the warrant would reveal its char-

acter. That the jury would be justified in finding from the evidence that the defendants closely examined it, computed interest on it, and in so doing discovered that it was issued to reimburse the sinking fund, hardly admits of doubt. William Wallace, cashier of the defendant bank, testified that the warrant was received for collection in October or November, 1896; that the letter in which it was received directed the collection of "one hundred and eighty thousand and odd dollars, * * * and interest"; that the New York bank asked only the face of the warrant, with six per cent from April 10, 1895. It further appears that Bartley's check covered interest on the warrant at the rate of seven per cent up to January 2, 1897, and that the defendants turned over to the Atkinson bank something over $3,000, being interest at the rate of one per cent on the warrant during the time it was outstanding. It also appears that at some time, for some purpose not disclosed by the record, the defendant Millard had possession of the warrant, and, in his official capacity, indorsed it. The conclusion is, we think, irresistible that the Omaha bank had actual knowledge of what was written upon the face of the warrant. At any rate, it is clear that a jury might with propriety find that such was the fact. The trial court, therefore, erred in directing a verdict in favor of the defendants.

Since the foregoing opinion was prepared there has been presented to us an additional brief on behalf of defendants challenging the sufficiency of the petition in error. Without any intimation that counsel had other arrows in his quiver, he was given leave to file a supplemental brief, after the cause was submitted, but was informed at the time that the court would not feel bound to consider it. Neither in the original brief nor in the elaborate oral argument was there any allusion to an alleged defect in the petition in error. And yet, if it be true that the pleading is so lacking in essential averments as to preclude an adjudication on the merits, the

matter should, in all fairness, have been called to our attention at the earliest moment. Counsel have no right to impose upon us the labor of investigating questions which they believe are not properly before us for decision. Besides, the practice of raising new points when the case is in the hands of the court is not fair to the adverse party. It has the appearance of being strategic. It is subject to the suspicion that it may be an adroit maneuver to gain an advantage. We do not purpose either to encourage or countenance it, and, therefore, decline to consider the belated brief.

The judgment is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

HARRISON, C. J.

Prior to the submission of this cause to the trial jury the court denied a motion of the plaintiff to dismiss its action, without prejudice. This refusal was assigned as error. I think the point well taken, and for this reason join in the judgment of reversal. I do not concur in the reasons for reversal stated in the opinion.

NORVAL, J., took no part.