JOHN DEERE COMPANY, APPELLEE, v. BOELUS STATE BANK, APPELLANT.

448 N.W.2d 163

Filed November 22, 1989.    No. 88-083.

Galen E. Stehlik for appellant.

Lynn A. Mitchell, of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This is a suit by the plaintiff, John Deere Company, against the Boelus State Bank on a cashier's check issued by the defendant bank and payable to the plaintiff. The trial court found that the plaintiff was a holder in due course and entitled to recover $8,455.85. The defendant has appealed and contends that the trial court erred in finding for the plaintiff because there was evidence of an affirmative defense under Neb. U.C.C. § 3-305(2) (Reissue 1980), and in finding that the plaintiff was a holder in due course because the instrument in question was never "issued" within the meaning of the Nebraska Uniform Commercial Code.

Since a suit on a cashier's check is an action at law, the factual findings by the trial court have the effect of a jury verdict and will not be set aside unless they are clearly wrong. *Heese Produce Co. v. Lueders, ante* p. 12, 443 N.W.2d 278 (1989). In reviewing the judgment, we do not reweigh the evidence but, instead, consider the judgment in the light most favorable to the successful party, who is entitled to the benefit of every inference which can reasonably be deduced from the evidence. *Corman v. Musselman*, 232 Neb. 159, 439 N.W.2d 781 (1989).

Taking the view of the evidence most favorable to the

plaintiff, the record shows that on October 8, 1982, Walter Duester entered into a "variable rate loan contract security agreement" in connection with the purchase of a John Deere combine and grain platform from St. Paul Equipment, Inc. (St. Paul). John Deere was the lender and secured party under the agreement, and the combine was pledged as collateral. When Duester failed to pay the balance of his contract ($8,455.84) by January 1986, the manager of St. Paul was instructed to repossess the combine.

On January 14, 1986, Randy Hansen, an employee of St. Paul, went to Duester's farm to repossess the combine. Duester told Hansen that he had received some payments for custom combining and would purchase a cashier's check and pay the debt to John Deere. Hansen followed Duester to the defendant bank at about 11 a.m. and waited outside for Duester to return.

Five or ten minutes later, Duester came out of the bank and gave Hansen a cashier's check in the amount of $8,455.84. The check was drawn on defendant Boelus State Bank, payable to the order of John Deere Company, and was signed by an authorized bank employee, Judy Jensen.

Hansen returned to St. Paul without repossessing the combine and delivered the cashier's check to the comptroller for St. Paul. About 1 hour later, Russell Jensen, the bank president, telephoned St. Paul and stated that the bank might not honor the check.

On or about January 22, 1986, John Deere presented the cashier's check for payment, but payment was refused.

A cashier's check is a draft drawn by a bank upon itself. *Pulaski Chase v. Kellogg-Citizens Bank*, 130 Wis. 2d 200, 386 N.W.2d 510 (1986). Neb. U.C.C. § 3-118(a) (Reissue 1980) provides that a draft drawn on the drawer is effective as a note. See, also, *Thompson Poultry, Inc. v. First Nat. Bank of York*, 199 Neb. 8, 255 N.W.2d 856 (1977) (a bank money order is essentially the same as a cashier's check and is equivalent to a negotiable promissory note of the bank); *TPO Incorporated v. Federal Deposit Insurance Corp.*, 487 F.2d 131 (3d Cir. 1973).

As the court in *Banco Ganadero y Agricola, Etc. v. Soc. Nat. Bk., Cleve.*, 418 F. Supp. 520, 524 (N.D. Ohio 1976), observed:

> Treating a cashier's check as the bank's promissory

note, the question becomes not whether the bank may stop payment thereon—for stopping payment only makes sense as a concept where a drawer wishes to prevent the drawee, another party, from paying the instrument—but rather whether the bank, as maker of the instrument, is liable thereon. Therefore, it is concluded that a cashier's check drawn by a bank on itself is more accurately treated as a note than as an "accepted" check.

See, also, *Pulaski Chase v. Kellogg-Citizens Bank, supra*; 1 J. White & R. Summers, Uniform Commercial Code § 14-10 at 736 (3d ed. 1988).

Neb. U.C.C. § 3-413(1) (Reissue 1980) provides that the maker of a note "engages that he will pay the instrument according to its tenor at the time of his engagement . . . ." See, also, *Grand Island Prod. Credit Assn. v. Humphrey*, 223 Neb. 135, 388 N.W.2d 807 (1986).

Neb. U.C.C. § 3-307 (Reissue 1980) provides:

(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. . . .

. . . .

(2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

(3) After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course.

In *Center Bank v. Mid-Continent Meats, Inc.*, 194 Neb. 665, 666-67, 234 N.W.2d 902, 903 (1975), this court stated:

The answer does not specifically deny the signatures. Under such circumstances the signatures are admitted and the holder of the notes is entitled to recover on them unless the defendants establish a defense. [Citations omitted.] The burden is upon the defendants to plead and prove such defense.

See, also, *Blaha GMC-Jeep, Inc. v. Frerichs*, 211 Neb. 103, 317 N.W.2d 894 (1982); *Newman Grove Creamery Co. v. Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981).

In its answer, the bank generally denied the allegations of the

petition and made the following allegations concerning affirmative defenses:

4. That on or about December 30, 1985, the Directors of the Boelus State Bank resolved that two signatures would be required on all Cashier's Checks issued by the Boelus State Bank. . . .

5. That on or about January 14, 1986, the Boelus State Bank was requested to issue a Cashier's Check payable to the order of John Deere Company in the amount of $8,455.85 [sic] by Melvin [sic] Deuster [sic].

6. That the teller who was waiting on Mr. Deuster [sic] stated that she would need a second signature on the check and excused herself to request a loan officer to come to the front counter to sign the check.

7. That when the teller returned with the loan officer, the check as well as Mr. Deuster [sic] had left the bank.

8. That immediately the loan officers, Russell Jensen and Andrew Jensen, personally contacted Mr. Deuster [sic] to inform him that the Cashier's Check was invalid because it did not have two signatures. Mr. Deuster [sic] stated he had already given the check to John Deere Company.

9. Loan officer, Russell Jensen, immediately thereafter contacted John Deere Company informing them that the check was invalid because it did not have two signatures.

10. That the above stated Cashier's Check was never officially issued, and therefore it could not be honored upon presentation by John Deere Company.

Since the bank did not specifically deny that the signature on the check was valid, see § 3-307, comment 1, the signature was admitted, and the plaintiff was entitled to recover unless the bank established a defense. If the bank established a defense, then the plaintiff had the burden of proving that it was a holder in due course. See *Bank of Valley v. Mattson*, 215 Neb. 596, 339 N.W.2d 923 (1983).

Neb. U.C.C. § 3-306 (Reissue 1980) provides:

Unless he has the rights of a holder in due course any person takes the instrument subject to

. . . .

(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose . . . and

(d) the defense that he or a person through whom he holds the instrument acquired it by theft . . . .

Section 3-305 provides:

To the extent that a holder is a holder in due course he takes the instrument free from

. . . .

(2) all defenses of any party to the instrument with whom the holder has not dealt except

. . . .

(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity

. . . .

Although the bank alleged that Duester had acquired the cashier's check by theft and that the check had not been delivered, if the plaintiff was a holder in due course it is unnecessary to consider the defenses alleged by the bank.

"A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." Neb. U.C.C. § 3-302(1) (Reissue 1980). In this case the check had been drawn payable to the order of the plaintiff, John Deere. A holder is defined as a "person who is in possession of . . . an instrument . . . *drawn,* issued or indorsed to him or to his order or to bearer or in blank." (Emphasis supplied.) Neb. U.C.C. § 1-201(20) (Reissue 1980).

The payee of an instrument may be a holder in due course if he meets the requirements of § 3-302. Section 3-302 and comment 2 thereto. A holder takes an instrument for value when he takes the instrument in payment of an antecedent claim against any person. Neb. U.C.C. § 3-303(b) (Reissue 1980).

The record shows that John Deere was in possession of the cashier's check drawn on the defendant bank and which was payable to the order of John Deere. In obtaining the cashier's check, John Deere did not deal with the bank, and took the instrument in payment of the debt due it from Duester. There

was no defect apparent on the face of the instrument. Duester did not tell Hansen what had happened while he was in the bank, did not tell Hansen that there might be a problem with the cashier's check, and did not discuss the subject of his bank loan with anyone from St. Paul. The record supports the trial court's conclusion that John Deere's agent, Hansen, had no knowledge of any defense against the instrument when he received the cashier's check in payment of Duester's debt to St. Paul. Although John Deere subsequently was informed that the bank intended to dishonor the check, subsequent knowledge of an alleged infirmity does not impair its holder in due course status. *Schranz v. I. L. Grossman, Inc.*, 90 Ill. App. 3d 507, 412 N.E.2d 1378 (1980); *Lynnwood Sand & Gravel v. Bank of Everett*, 29 Wash. App. 686, 630 P.2d 489 (1981). The trial court's finding that John Deere was a holder in due course was not clearly wrong.

Since the plaintiff was a holder in due course, it is unnecessary to discuss the evidence relating to the bank's claim that the check had been stolen by Duester. Under § 3-306, a holder in due course takes the instrument not subject to "the defense that he or a person through whom he holds the instrument acquired it by theft . . . ."

In § 3-306, comment 5, it is stated: "The exception made in the case of theft is based on the policy which refuses to aid a proved thief to recover, and refuses to aid him indirectly by permitting his transferee to recover *unless the transferee is a holder in due course.*" (Emphasis supplied.) See, also, *O.P. Ganjo, Inc. v. Tri-Urban Realty Co., Inc.*, 108 N.J. Super. 517, 261 A.2d 722 (1969).

The judgment is affirmed.

AFFIRMED.