PAUL A. HECKER, APPELLANT, V. THE RAVENNA BANK, A BANKING
CORPORATION, ET AL., APPELLEES.
ARNOLD C. HECKER, APPELLANT, V. THE RAVENNA BANK, A
BANKING CORPORATION, ET AL., APPELLEES.

468 N.W.2d 88

Filed April 12, 1991.    Nos. 88-866, 88-867.

John S. Mingus, of Mingus & Mingus, for appellants.

Wesley C. Mues, of Knapp, Mues, Beavers & Luther, for appellees.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

In March 1986, Paul A. Hecker and Arnold C. Hecker commenced actions against The Ravenna Bank; Dale E. Pohlmann, the bank's president; and James H. Oliver, chairman of the bank's board of directors. The actions related,

first, to an oral agreement between Heckers and Ravenna Bank for credit and financing and, second, to a cashier's check payable to "Paul Hecker and Arnold Hecker and John Mingus." After a series of amended petitions, Heckers, in March 1988, each filed a "Fifth Amended Petition." When the district court for Buffalo County sustained demurrers to the amended petitions, Heckers elected to stand on their pleadings. The court dismissed Heckers' actions; hence, these appeals. We affirm in part, and in part reverse.

## STANDARD OF REVIEW

" 'In reviewing an order sustaining a demurrer, the Supreme Court accepts the truth of facts well pled and the factual and legal inferences which may be reasonably deduced from such facts, but does not accept conclusions of the pleader.' " *Security Inv. Co. v. State*, 231 Neb. 536, 538, 437 N.W.2d 439, 442 (1989).

> When ruling on a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial.

*Schuyler State Bank v. Cech*, 228 Neb. 588, 593, 423 N.W.2d 464, 468 (1988). Accord *Parrett v. Platte Valley State Bank*, 236 Neb. 139, 459 N.W.2d 371 (1990).

## THE HECKERS' LAST AMENDED PETITIONS
*Factual Background.*

According to Heckers, all activities and conduct in question occurred in response to Ravenna Bank's "policies concerning loans and business dealings" with Heckers. At all times in any transaction related to Heckers' lawsuits, Pohlmann and Oliver were acting in their official bank capacities and at the "Ravenna Bank's behest." Such "behesting" was alleged in each of the four "causes of action" contained in Heckers' fifth, and last, amended petitions, "causes of action" which will be designated and discussed after our review of facts which, under the particular standard of review, "are true as alleged [with] the

benefit of any reasonable inference from the facts alleged . . . ." *Schuyler State Bank v. Cech, supra* at 593, 423 N.W.2d at 468.

Heckers own a farm and livestock operation. In 1975, Ravenna Bank orally agreed to loan money or extend credit to Heckers for their operating expenses and advise them regarding financial matters pertinent to their business. Heckers agreed that Ravenna Bank would be their "sole lending institution" and that they would abide by the bank's determinations and business directives based on semiannual reviews of the Hecker operations.

During a semiannual review meeting in January 1982 and as a condition for further bank credit, Ravenna Bank required that Heckers' mother guarantee part of Heckers' debt to the bank. After Heckers supplied the guaranty, Ravenna Bank promised to "pay for" agricultural expenses subsequently incurred by Heckers, including their fertilizer, chemical, and fuel bills, but then reneged on that promise. On March 18, 1983, Ravenna Bank

> wrongfully convert[ed] a cashier's check # 25783 in the sum of $ 93,442.66, the maker thereof being the Ravenna Bank, Remitter, Mike Dobish, payees being Paul Hecker, Arnold Hecker and John Mingus, by stopping payment of said cashier's check and applying it to the outstanding loan of Arnold C. Hecker and Paul A. Hecker in lieu of honoring the payment of the same to the aforesaid designated payees thereon . . . .

Without Heckers' consent, proceeds from the cashier's check were applied on Heckers' debt to Ravenna Bank.

*Causes of Action.*

Heckers alleged four "causes of action." The first cause of action was based on a breach of the oral contract for an extension of credit or a bank loan to Heckers, the second was "wrongful conversion" of the cashier's check, the third was "wrongful dishonor" of the cashier's check under Neb. U.C.C. § 4-402 (Reissue 1980), and the fourth was "wrongful refusal" to honor the cashier's check. Heckers claimed several items of damage, but did not seek judgments for recovery of the proceeds from the cashier's check.

*Appellees' Pleadings.*

In response to demurrers directed to each "Fourth Amended Petition" of the Heckers, the court, on February 26, 1988, granted Heckers 20 days to file additional amended petitions. Within the 20 days, each of the Heckers filed a "Fifth Amended Petition." Pursuant to Neb. Rev. Stat. § 25-913 (Reissue 1989) (pleadings stricken), the appellees requested that the Heckers' fifth amended petitions, in their entirety, be stricken because those petitions were "filed in direct violation of this Court's order of February 26, 1988 . . . ." Also, the appellees demurred to Heckers' amended petitions and claimed, among other things, that Heckers improperly joined several causes of action and that their petitions failed to state facts sufficient to constitute a cause of action. See Neb. Rev. Stat. § 25-806(5) (Reissue 1989) (causes of action improperly joined) and § 25-806(6) (factual failure to state a cause of action).

*Judgments.*

The district court sustained the demurrers and motions to strike Heckers' fifth amended petitions in their entirety, but granted Heckers leave to amend their petitions. When Heckers declined to replead and stood on the allegations in their fifth amended petitions, the court dismissed Heckers' actions.

## ASSIGNMENTS OF ERROR

Most of Heckers' assignments of error are repetitive or not discussed in their briefs. See, Neb. Ct. R. of Prac. 9D(1)d and g (rev. 1989); *Federal Land Bank of Omaha v. Victor*, 232 Neb. 351, 440 N.W.2d 667 (1989) (for appellate consideration, appellant must assign and argue errors claimed for reversal). Nevertheless, Heckers contend that the district court erred (1) in sustaining the demurrers and (2) in striking their entire amended petitions.

## DISMISSAL OF THE AMENDED PETITIONS

The first question is whether Heckers stated facts sufficient to constitute a cause of action.

*Breach of Oral Agreement to Extend Credit.*

" 'To establish an express contract, there must be shown what amounts to a definite proposal and an

unconditional and absolute acceptance thereof. . . .

" 'Further, in order that a binding contract may result from an offer and acceptance, it is essential that the minds of the parties meet at every point, and that nothing be left open for a future arrangement.' "

*Professional Recruiters v. Oliver*, 235 Neb. 508, 513, 456 N.W.2d 103, 107 (1990) (quoting from *Zimmerman v. Martindale*, 221 Neb. 344, 377 N.W.2d 94 (1985)).

Moreover, sufficient and valid consideration is essential to an enforceable express contract. *Blanchard v. White*, 217 Neb. 877, 351 N.W.2d 707 (1984). See, also, 17A Am. Jur. 2d *Contracts* § 117 (1991). In *Buckingham v. Wray*, 219 Neb. 807, 809, 366 N.W.2d 753, 756 (1985), we stated:

[C]onsideration is sufficient to support a contract if there is any detriment to the promisee or benefit to the promisor. Generally, a court will not inquire into the adequacy of consideration for a contract, inasmuch as consideration based on value of property or performance of a promise is a matter of personal judgment by parties to a contract. Ordinarily, a contract will not be held invalid for inadequacy of consideration alone, unless inadequacy is so great as to furnish of itself evidence of fraud.

Thus, for a cause of action based on a breach of express contract, there must be an unconditional and absolute acceptance of a definite offer constituting an agreement supported by sufficient and valid consideration. Cf. *Garsick v. Dehner*, 145 Neb. 73, 79, 15 N.W.2d 235, 238 (1944):

Speaking generally, mutuality of obligation is an essential element of every enforceable agreement. However, "Mutuality of contract consists in the obligation of each party to do, or to permit something to be done, in consideration for the act or promise of the other. . . . Mutuality is absent when one only of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only."

Accord *De Los Santos v. Great Western Sugar Co.*, 217 Neb. 282, 348 N.W.2d 842 (1984).

Heckers alleged that Ravenna Bank offered to extend credit or make a loan to Heckers and provide them with financial

advice in exchange for Heckers' use of the bank as their sole source of credit. Heckers further alleged their compliance with all bank instructions and requests, such as the maternal guaranty, thereby satisfying a condition precedent to Ravenna Bank's obligation to extend credit or loan money to the Heckers. See *Frenzen v. Taylor*, 232 Neb. 41, 48, 439 N.W.2d 473, 478 (1989): "When a contractual duty is subject to the occurrence of a specific contingency or event as a condition, the condition must occur before a party is obligated to perform the contractual duty unless nonoccurrence is excused." See, also, Neb. Rev. Stat. § 25-836 (Reissue 1989) (pleading performance of conditions precedent). Heckers then alleged that Ravenna Bank refused to keep its promise to "pay for" Heckers' 1982 business expenses. Therefore, Heckers alleged facts sufficient to state a breach of contract cause of action against Ravenna Bank. Consequently, the district court's judgments, sustaining demurrers for failure to state a breach of contract cause of action against Ravenna Bank, are incorrect.

Generally, a corporation's directors or officers are not liable to the corporation's creditors or third persons for corporate acts or debts, simply by reason of an official relation with the corporation. See, *Hilzendager v. Skywarok*, 335 N.W.2d 768 (N.D. 1983); *A. B. Corporation v. Futrovsky*, 259 Md. 65, 267 A.2d 130 (1970); *Stratton v. West States Construction*, 21 Utah 2d 60, 440 P.2d 117 (1968); *Kiel v. Frank Shoe Mfg. Co.*, 245 Wis. 292, 14 N.W.2d 164 (1944).

As a general rule, concerning liability on a corporate contract, a corporation's directors or officers are in the same position as agents of private individuals and are not personally liable on a corporation's contract unless the corporate directors or officers purport to bind themselves, or have otherwise bound themselves, to performance of the contract. See, *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 598 P.2d 45, 157 Cal. Rptr. 392 (1979); *Staffco, Inc. v. Maricopa Trading Co.*, 122 Ariz. 353, 595 P.2d 31 (1979); *A. B. Corporation v. Futrovsky, supra*; *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 246 A.2d 407 (1968). See, also, 18B Am. Jur. 2d *Corporations* § 1829 (1985). In *Edwin Bender & Sons v. Ericson Livestock Comm. Co.*, 228 Neb. 157, 164, 421 N.W.2d 766, 771 (1988), we said:

" ' "[W]here an obligation is that of a principal, a court cannot enforce the obligation against the agent as long as he is merely acting as agent.". . .' " See, also, *Savorelli v. Stone*, 168 Neb. 419, 428, 96 N.W.2d 222, 227 (1959): " 'Where one acting as the agent of a corporation makes a contract on its behalf, which is binding upon it, his acts in that behalf create no individual or personal liability against him.' " (Quoting from *Fremont Carriage Mfg. Co. v. Thomsen*, 65 Neb. 370, 91 N.W. 376 (1902).)

Heckers failed to allege facts, either as an express statement or as a basis for the inference, that Pohlmann and Oliver personally and in their individual capacities bound themselves to the credit or loan agreement involving Ravenna Bank. Consequently, Heckers failed to state a cause against Pohlmann and Oliver for breach of the credit or loan agreement in question. The district court correctly sustained the Pohlmann-Oliver demurrers to the breach of contract cause of action.

*Conversion of the Cashier's Check.*

A cashier's check is a bill of exchange drawn by a bank on itself; hence, issuance of a cashier's check constitutes acceptance by the issuing bank. See, *Thompson Poultry, Inc. v. First Nat. Bank of York*, 199 Neb. 8, 255 N.W.2d 856 (1977); *John Deere Co. v. Boelus State Bank*, 233 Neb. 818, 448 N.W.2d 163 (1989); 6 J. Reitman, H. Weisblatt, W. Schlichting, T. Rice & J. Cooper, Banking Law §§ 123.04 and 120.02 (1991) (hereinafter 6 Banking Law); 10 Am. Jur. 2d *Banks* § 544 (1963).

A cashier's check is a "negotiable instrument" in accord with Neb. U.C.C. § 3-104 (Reissue 1980). "A negotiable instrument can be the subject of conversion." *Bryant Heating v. United States Nat. Bank*, 216 Neb. 107, 113, 342 N.W.2d 191, 195 (1983). Accord *State v. Omaha Nat. Bank*, 59 Neb. 483, 81 N.W. 319 (1899). See, also, Neb. U.C.C. § 3-419 (Reissue 1980), which provides that

[a]n instrument is converted when

(a) a drawee to whom it is delivered for acceptance refuses to return it on demand; or

(b) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or

(c) it is paid on a forged indorsement.

In Nebraska's common law, conversion "is the unauthorized and wrongful dominion over personal property owned by another, which is exerted as a denial of or inconsistent with the owner's rights in the property or is asserted in derogation, exclusion, or defiance of another's ownership or title in personal property." *Mason v. Schumacher*, 231 Neb. 929, 944, 439 N.W.2d 61, 71 (1989).

Section 3-419 supplies examples of ways in which a negotiable instrument may be converted, and does not list the elements which constitute tortious conversion of a negotiable instrument. *Fuscellaro v. Industrial Nat'l Corp.*, 117 R.I. 558, 368 A.2d 1227 (1977); *Yeager & Sullivan, Inc. v. Farmers Bank*, 162 Ind. App. 15, 317 N.E.2d 792, 797 (1974). See Neb. U.C.C. § 3-102 (Reissue 1980) ("instrument" means "negotiable instrument").

Neb. U.C.C. § 1-103 (Reissue 1980) states: "Unless displaced by the particular provisions of this act, the principles of law and equity . . . shall supplement its provisions." Therefore, § 3-419 does not displace the common-law action for conversion of a negotiable instrument, but coexists with Nebraska's common law. See *PWA Farms v. North Platte State Bank*, 220 Neb. 516, 371 N.W.2d 102 (1985). See, also, *Bryant Heating v. United States Nat. Bank, supra* (common-law principles simultaneously applied with § 3-419). Cf. *Brown v. United States Nat. Bank*, 220 Neb. 684, 371 N.W.2d 692 (1985) (material elements of common-law fraud must be established before any relief is available for "fraud" contemplated by Neb. U.C.C. § 5-114(2) (Reissue 1980), which does not specifically identify the elements of fraud).

The payee of a cashier's check is the rightful "owner" of the check, which is "property" that may be the subject of tortious conversion. See § 3-419, comment 2:

A negotiable instrument is the property of the holder. It is a mercantile specialty which embodies rights against other parties, and a thing of value. This section adopts the generally recognized rule that a refusal to return it on

demand is a conversion. The provision is not limited to drafts presented for acceptance, but extends to any instrument presented for payment, including a note presented to the maker. The action is not on the instrument, but in tort for its conversion.

See, also, 1 J. White & R. Summers, Uniform Commercial Code § 15-4 (3d ed. 1988).

Heckers alleged that Ravenna Bank refused Heckers' demand to pay the cashier's check on which Heckers were designated as payees, a refusal which resulted in Heckers' damages. Moreover, without Heckers' consent, Ravenna Bank applied the proceeds of the cashier's check on Heckers' indebtedness to the bank. An issuing bank's refusal on demand to pay a cashier's check is not only a distinct act of dominion wrongfully asserted over the payee's property in denial of or inconsistent with property rights of the payee, but is also specifically listed as a conversion defined in § 3-419(1)(b). Heckers alleged facts sufficient to constitute a cause of action for Ravenna Bank's conversion of the cashier's check. For that reason, the court improperly sustained Ravenna Bank's demurrers based on a failure to state a cause of action for conversion.

A corporation's officer or agent is personally liable if the officer or agent causes a conversion of another's property, and it is no defense that such officer or agent converted the property while acting for the corporation. See, *Lyon v. Bennington College Corp.*, 137 Vt. 135, 400 A.2d 1010 (1979); *Bush v. Hayes*, 286 Mich. 546, 282 N.W. 239 (1938); *Clark v. Groger*, 102 Wash. 188, 172 P. 1164 (1918). See, also, 18 Am. Jur. 2d *Conversion* § 73 (1985). Cf., *Morfeld v. Bernstrauch*, 216 Neb. 234, 239, 343 N.W.2d 880, 883 (1984) ("[a]n agent is personally liable to third persons for his own misfeasances and positive wrongs"); *Standard Grain Co. v. State Bank*, 106 Neb. 73, 182 N.W. 507 (1921).

Heckers alleged that Pohlmann and Oliver, although acting for Ravenna Bank, nonetheless refused to pay the cashier's check after Heckers had delivered the check to Ravenna Bank for payment and that Pohlmann and Oliver, after "stopping payment" on the check, applied the check proceeds on Heckers'

unpaid loan from the bank. Thus, Heckers alleged sufficient facts to constitute a cause of action against Pohlmann and Oliver for conversion of the cashier's check. Consequently, the court improperly sustained the Pohlmann-Oliver demurrers based on a failure to state a cause of action for conversion.

*Wrongful Dishonor of the Cashier's Check.*

Heckers' cause of action for "wrongful dishonor" is based on § 4-402, which provides that a "payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item." A customer is statutorily defined as "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank." Neb. U.C.C. § 4-104(1)(e) (Reissue 1980). A cashier's check is the primary obligation of an issuing bank, which, as drawer and drawee of the cashier's check, is the bank's own customer. See, *Maddox v. First Westroads Bank*, 199 Neb. 81, 256 N.W.2d 647 (1977); § 4-104(1)(e); 10 Am. Jur. 2d *Banks* § 544 (1963); 6 Banking Law § 133.10 (1991). Generally, payees of a cashier's check are not "customers" under § 4-104(1)(e). See *First Amer. Nat. Bank v. Commerce Union Bank,* 692 S.W.2d 642 (Tenn. App. 1985).

Heckers alleged only that they were payees of the cashier's check, but failed to allege that they had an account pertaining to the cashier's check, or that Ravenna Bank had agreed to collect items for Heckers. Thus, Heckers failed to allege that they were "customers" of Ravenna Bank within § 4-104(1)(e). Accordingly, Heckers failed to state facts sufficient to constitute a cause of action under § 4-402 against Ravenna Bank, Pohlmann, or Oliver. The demurrers to the "wrongful dishonor" cause of action were correctly sustained.

*Wrongful Refusal to Honor the Cashier's Check.*

Although a bank accepts a cashier's check by issuing it, such acceptance does not become operative until delivery or notification. Neb. U.C.C. § 3-410(1) (Reissue 1980). Wrongful refusal to honor a cashier's check occurs when a payee of a cashier's check delivers or negotiates the check for payment, and the issuing bank refuses to honor the check. See, *John Deere Co. v. Boelus State Bank*, 233 Neb. 818, 448 N.W.2d 163

(1989); *Thompson Poultry, Inc. v. First Nat. Bank of York*, 199 Neb. 8, 255 N.W.2d 856 (1977); Neb. U.C.C. § 1-201(14) (Reissue 1980) (" 'Delivery' with respect to instruments, documents of title, chattel paper or securities means voluntary transfer of possession"); Neb. U.C.C. § 3-202(1) (Reissue 1980) ("Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery").

From the facts alleged by Heckers, we draw the inference that the necessary endorsements appeared on the cashier's check which Heckers delivered to Ravenna Bank. Heckers then alleged that they were payees for the cashier's check and that Ravenna Bank, the issuing bank, refused to honor the check. Hence, Heckers stated sufficient facts to constitute a cause of action for Ravenna Bank's wrongful refusal to honor the cashier's check drawn on the bank. However, Heckers failed to allege that Pohlmann and Oliver bound themselves, individually and outside their official capacities with Ravenna Bank, to honor the cashier's check. For that reason, Heckers failed to state sufficient facts to constitute a cause of action against Pohlmann and Oliver for "wrongful refusal" to honor the cashier's check.

## MISJOINDER OF CAUSES OF ACTION

Section 25-806 provides that the "defendant may demur to the petition only when it appears on its face . . . (5) that several causes of action are improperly joined . . . ." Neb. Rev. Stat. § 25-702 (Reissue 1989) provides that "[e]xcept for product liability actions, the causes of action so united must affect all the parties to the action, and not require different places of trial." In *Ravenna Bank v. Custom Unlimited*, 223 Neb. 540, 545, 391 N.W.2d 557, 561 (1986), we stated, " '[C]auses of action involving different defendants cannot be joined unless each cause affects them all and they have a joint or common liability or interest.' " Accord, *Fuchs v. Parsons Constr. Co.*, 166 Neb. 188, 88 N.W.2d 648 (1958); *Sickler v. City of Broken Bow*, 143 Neb. 542, 10 N.W.2d 462 (1943).

Heckers have misjoined some causes of action against

Ravenna Bank, Pohlmann, and Oliver because neither the cause of action for breach of the credit or loan agreement nor the cause of action for wrongful refusal to honor a cashier's check legally relates to Pohlmann and Oliver. The district court's judgments on the issue of a misjoinder of causes of action are correct.

## DEFECT OF PARTIES

Section 25-806(4) provides that a "defendant may demur to the petition only when it appears on its face . . . (4) that there is a defect of parties, plaintiff or defendant . . . ." Neb. Rev. Stat. § 25-318 (Reissue 1989) states: "Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason being stated in petition." This court stated that "parties jointly liable must be joined as defendants . . . and of course the same rule would apply as to plaintiffs. . . . [J]oint obligees must sue jointly in actions *ex contractu* . . . ." *Harker v. Burbank*, 68 Neb. 85, 89, 93 N.W. 949, 950 (1903).

Payees of the cashier's check were Paul Hecker, Arnold Hecker, and John Mingus. Heckers failed to join Mingus as a plaintiff or, in accord with § 25-318, as a defendant. Thus, Heckers' petitions contain a defect of parties regarding an action based on the jointly payable cashier's check. The district court's judgments regarding a defect of parties are correct.

## MOTION TO STRIKE

Section 25-913 provides that "[m]otions to strike pleadings and papers from the files may be made with or without notice, as the court or judge shall direct." In *Ferson v. Armour & Co.*, 109 Neb. 648, 192 N.W. 125 (1923), the plaintiff filed a 400-page petition followed by three amended petitions over a 4-year period. This court characterized the *Ferson* pleading as

> inflammatory language, conclusions of fact and law, redundant allegations, unnecessary repetitions, scandal, private chat, personal episodes, evidence, criminal charges and other extraneous matters having no legitimate relation to the stating of a cause of action for damages. These flagrant violations of the rules of pleading stand out

conspicuously on the face of the petition. . . .

. . . .

. . . Litigants and counsel alike are answerable to the court for violating established rules of procedure and orders made in regard to pleadings. Plaintiffs' fourth petition not only violated established rules, but it was filed in contempt of court. In a situation like this defendants are not limited to the statutory method of attacking the petition by motion to strike out improper matter or to make allegations more definite and certain. . . . It may be stricken from the files, if fatal defects extend to the pleading as a whole, or if plaintiffs in filing it ignored an order of the court. . . . [However, this power to strike pleadings and papers] should be sparingly exercised. Otherwise innocent suitors may suffer from the mistakes or the contumacy of attorneys whom the court itself has licensed to practice law.

*Ferson, supra* at 649, 651, 192 N.W. at 126-27.

The *Ferson* court declared that a trial court properly struck an entire petition as a violation of a court order and a rule of pleading, namely, a petition must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition." Comp. Stat. § 8608 (1922). See, also, Neb. Rev. Stat. § 25-804 (Reissue 1989).

In *Lewin v. Lewin,* 174 Neb. 596, 119 N.W.2d 96 (1962), this court held that a motion to strike a petition should be treated as a demurrer, and added that "[a] petition which shows on its face that a cause of action could not be stated by amendment appears to be [vulnerable to a motion to strike the pleading]." 174 Neb. at 602, 119 N.W.2d at 100. We now limit the preceding expression in *Lewin* and declare that a motion to strike a petition, pursuant to § 25-913, is not a substitute for a demurrer under § 25-806 or a motion to strike or make more definite and certain as authorized by Neb. Rev. Stat. § 25-833 (Reissue 1989). A motion to strike a petition, pursuant to § 25-913, may be directed only to a petition filed in violation of a court's order or a rule of practice or procedure prescribed either by statute or by the court in which the petition is filed.

In the present case, the appellees moved to strike Heckers'

fifth amended petitions as violations of the court orders, issued on February 26, 1988, which provided that Heckers were "hereby granted twenty (20) days from this date to file his Fifth Amended Petition or may stand on his Fourth Amended Petition . . . ." Heckers complied with the orders by filing their amended petitions within 20 days. Yet, the district court sustained the motions to strike. Although Heckers each filed five amended petitions over 2 years, we are not directed to any rule of practice or procedure, prescribed by statute or by rule of the district court, which prohibited Heckers' repetitive pleading. Therefore, Heckers' last amended petitions violated neither a court order nor a rule of practice or procedure. Thus, Hecker's fifth amended petitions were not subject to a motion to strike pursuant to § 25-913. Hence, the district court improperly struck Heckers' fifth amended petitions.

## CONCLUSION

For the reasons expressed above, we affirm the district court's judgments sustaining Ravenna Bank's demurrers concerning misjoinder of the breach of contract actions against the bank with the breach of contract actions against Pohlmann and Oliver, sustaining the demurrers concerning a defect of parties for the conversion actions, sustaining the demurrers regarding misjoinder of the causes of action for breach of contract and "wrongful refusal" to honor the cashier's check, and sustaining the demurrers relative to a defect of parties regarding the "wrongful refusal" actions. Accordingly, we sustain the district court's dismissal of the "wrongful dishonor" actions against Ravenna Bank.

Further, we affirm the district court judgments sustaining the Pohlmann-Oliver demurrers pertaining to the breach of contract actions, the "wrongful dishonor" actions, and the "wrongful refusal" actions and, thus, affirm dismissal of those actions against Pohlmann and Oliver. Additionally, we affirm the district court's judgments sustaining the Pohlmann-Oliver demurrers regarding a defect of parties for the conversion action.

However, we reverse the district court's dismissal of Heckers' breach of contract actions against Ravenna Bank; the

conversion actions against the bank, Pohlmann, and Oliver; and the "wrongful refusal" against the bank; hence, we remand these particular causes, immediately aforementioned, for further proceedings. We do not decide the propriety of joining the specific causes of action mentioned in this paragraph because the issue, as far as we are able to glean from the record, was never presented to the district court.

Finally, we reverse the district court's judgments striking Heckers' fifth amended petitions in their entirety, that is, Heckers' "last amended petitions," which eventually may become actuality or simply be an expression of hope by this court.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR FURTHER
PROCEEDINGS.