JACK K. LEWIS AND SAM L. WATSON, APPELLEES, V. KENNETH OPSTEIN, APPELLANT.

510 N.W.2d 381

Filed April 13, 1993.   No. A-91-559.

Warren S. Zweiback and Edith T. Peebles, of Zweiback, Hotz & Lamberty, P.C., for appellant.

Charles O. Forrest, of Polack, Woolley & Forrest, P.C., for appellees.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

CONNOLLY, Judge.

## I. INTRODUCTION

This appeal arises from a motion for summary judgment filed in the trial court by the appellees, who were the assignees of a promissory note signed by the appellant, who had refused to pay off the note. The appellant argued that the appellees were not holders in due course because they had taken the note with notice of a claim against it. In support of their motion for summary judgment, the appellees filed affidavits stating that they had taken the note without notice of any claim against it. The trial court found that because the appellant had failed to adduce evidence to challenge the appellees' evidence that they were holders in due course, there was no genuine issue of fact presented in the case. The motion for summary judgment was granted. We affirm.

## II. FACTS

### 1. THE NOTE

On September 22, 1986, the appellant, Kenneth Opstein, signed a promissory note in the amount of $72,000 payable to attorney Harry J. Farnham. The note covered legal services, office expenses, and advances and expenses for 1986 through September 1. Interest on the note accrued at 10 percent per annum from September 22, and the note was payable as follows: interest to date on December 31, 1986, and principal and interest in full on December 31, 1987. In the event of default, the holder was entitled to demand immediate payment of the note in full. Interest on the note would accrue at 12 percent per annum from the date of maturity.

The same day the note was executed, Farnham sold the note

at face value, assigning it with recourse to Jack K. Lewis and Sam L. Watson, the appellees. Lewis and Watson each wrote personal checks payable to Farnham for $36,000 to cover the purchase price of the note.

## 2. BACKGROUND

Opstein was a wealthy businessman in the insurance industry. Prior to 1986, Farnham had acted as an attorney for Opstein on several business and personal matters. Payment for those services had been made by a promissory note in the amount of $163,525 executed December 31, 1985. The note covered legal services from 1983 to 1985, office expenses for 1984 and 1985, and advances and expenses. The format, interest rates, and payment provisions of the December 1985 note were identical to those of the September 1986 note. The only differences between the two notes were the operative dates and the dollar figures.

Farnham had also served as an attorney for Lewis on other matters. At the time the note at issue was assigned to Lewis and Watson, Lewis knew that Farnham had provided legal services for Opstein in the past.

## 3. THE DISPUTE

Opstein did not pay off the note when it came due. Lewis and Watson filed suit November 30, 1989, seeking judgment against Opstein for the unpaid principal and 12 percent interest thereon accruing from the date of maturity. In his initial answer, Opstein challenged the validity of his signature on the note. In his amended answer, Opstein acknowledged that he had signed the note, but alleged (1) that Farnham had abused his fiduciary duty and had wrongfully duped Opstein into signing the note and (2) that Lewis and Watson had taken the note with notice that Opstein had a defense against the note because of Farnham's wrongdoing. Lewis and Watson filed a motion for summary judgment, attaching to the motion affidavits stating that they had taken the note without notice of any claims or defenses against it. In his second amended answer, Opstein reasserted the claim that Lewis and Watson were not entitled to recover on the note because they had taken the note with notice that it was subject to a defense of breach of fiduciary duty. In

their reply, Lewis and Watson reasserted their claim that they had taken the note without notice of any claims or defenses against it.

The trial court found that Lewis and Watson were holders in due course of the note because there was no evidence to controvert their statements that they had taken the note without notice of any claims against it. Opstein failed to show evidence that when they took the note, Lewis and Watson knew Opstein had been induced to sign the note by Farnham's alleged breach of fiduciary duty. The court stated that "mere knowledge that Mr. Farnham was the defendant's attorney, and that defendant's note was in his attorney's possession payable to the attorney, does not of itself raise any inherent flag [suggesting] that the note was suspiciously negotiated." Finding no genuine issue of fact, the court granted the motion for summary judgment in favor of Lewis and Watson.

### III. ASSIGNMENTS OF ERROR

Since Opstein acknowledged signing the note, we ignore his assignment of error regarding the signature on the note. We condense the remaining assignments of error into the following: (1) The trial court erred in placing on Opstein the burden of proving that Lewis and Watson were not holders in due course and (2) the trial court erred in finding there was no genuine issue of fact concerning the claim by Lewis and Watson that they had no knowledge of any breach of fiduciary duty by Farnham in the execution of the note.

### IV. STANDARD OF REVIEW

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992).

On appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

## V. ANALYSIS

### 1. BURDEN OF PROOF

A signature on a promissory note is presumed genuine unless specifically denied in the pleadings. See Neb. U.C.C. § 3-307(1) (Reissue 1980) (recodified under Neb. U.C.C. § 3-308(a) (Reissue 1992)). The holder of a signed promissory note is entitled to recover upon production of the note unless the defendant establishes a defense. See § 3-307(2) (Reissue 1980) (recodified under § 3-308(b) (Reissue 1992)). Opstein never specifically denied signing the note. Thus, Lewis and Watson were entitled to recover unless Opstein established a defense.

Opstein raised the defense that Lewis and Watson took the note with notice of Farnham's alleged wrongdoing in the execution of the note. Under § 3-307(3) (Reissue 1980) (recodified under § 3-308(b) (Reissue 1992)), if Opstein, the maker of the note, shows that a defense exists, then Lewis and Watson have the burden of proving their status as holders in due course.

A holder in due course is a holder who takes the instrument for value, in good faith, and without notice that it is overdue, has been dishonored, or is subject to a defense or claim by any person. See, Neb. U.C.C. § 3-302(1) (Reissue 1980) (recodified under Neb. U.C.C. § 3-302(a)(2) (Reissue 1992)); *John Deere Co. v. Boelus State Bank*, 233 Neb. 818, 448 N.W.2d 163 (1989). In support of their motion for summary judgment, Lewis and Watson submitted affidavits stating the following: They took the note for value and in good faith; the note was not overdue, nor had it ever been dishonored; and they took the note without notice of (1) any alterations in the note, (2) any defense or claim against the note by any person, and (3) any discharge by Opstein.

A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must

produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. *Spittler v. Nicola, supra.* Lewis and Watson met this burden by submitting the affidavits described immediately above. The affidavits were the only evidence adduced on the question of whether Lewis and Watson knew of an alleged breach of fiduciary duty by Farnham.

After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Id.* Opstein misstates the law in his assignment of error when he states that the court burdened him with *proving* that Lewis and Watson were not holders in due course. Opstein merely had to present enough evidence to raise a genuine issue of fact. Under the rule in *Spittler,* the submission of the affidavits by Lewis and Watson placed on Opstein the burden of at least contesting the evidence that Lewis and Watson were holders in due course, i.e., that they were unaware at the time they took the note of any alleged wrongdoing by Farnham. Therefore, Opstein's assignment of error regarding his burden to present evidence on the holder in due course issue is without merit.

## 2. No Genuine Issue of Fact

There is no direct evidence in the record suggesting that when they purchased the note from Farnham, Lewis and Watson had notice of an alleged breach of duty by Farnham concerning the negotiation of the note. The affidavits and deposition testimony of Lewis and Watson unequivocally denied any such knowledge. In his pleadings, Opstein repeatedly asserted that Lewis and Watson did possess such knowledge. However, Opstein never offered any evidence to prove the assertion. Opstein conceded that Lewis and Watson had taken the note for value in good faith, and those two elements of holder in due course status were not challenged in either the affidavit or the second amended answer filed in response to the motion for summary judgment. Opstein's challenge focused on the "without notice" element of holder in due course status. His

second amended answer alleged that Lewis and Watson had taken the note with notice of a claim against it, *but the affidavit filed in response to the motion for summary judgment was silent on this issue,* the only issue on which there could have been a genuine factual question sufficient to defeat summary judgment.

After the filing of the second amended answer, Opstein was asked by counsel for Lewis and Watson during deposition testimony whether there was any evidence substantiating the assertion that Lewis and Watson knew of any wrongdoing by Farnham in executing the note:

> [Counsel:] To the best of your knowledge, is there any information or documents . . . which would indicate that Dr. Lewis or Dr. Watson had any knowledge of any breach of a fiduciary duty on the part of Harry Farnham?
>
> [Opstein:] Well, I'm not an attorney, I don't know if I could answer that, but they knew Harry was my attorney.
>
> . . . .
>
> [Counsel:] Okay. But, other than the fact that they knew that he was your attorney, is there any other document or evidence that you have that Dr. Lewis or Dr. Watson were aware of any breach of fiduciary duty running from Harry Farnham to you?
>
> [Opstein:] Not to my knowledge.

Thus, the direct evidence in the record negates Opstein's allegation that Lewis and Watson took the note with notice of a claim against it.

Nonetheless, Opstein argues that there is enough circumstantial evidence in the record to create a factual question as to whether Lewis and Watson took the note without notice of a claim against it. In his brief, Opstein sets out the following proposition of law:

> Where circumstances regarding the negotiation of a promissory note give rise to the implication that the purchaser knew or should have known the assignor was a fiduciary of the promisor and of circumstances which draw into suspicion the validity of the note, a factual question is presented as to whether the purchaser is a holder in due course.

Brief for appellant at 2. In support of that proposition, Opstein cites American Jurisprudence 2d and case law from Nebraska and other jurisdictions. None of the authorities cited by Opstein set out or support the proposition as stated. However, the Uniform Commercial Code of Nebraska states that "[a] person has 'notice' of a fact when . . . from all the facts and circumstances known to him at the time in question he has reason to know that it exists." Neb. U.C.C. § 1-201(25)(c) (Reissue 1980) (recodified under Neb. U.C.C. § 1-201(25)(c) (Reissue 1992)). The thrust of Opstein's appeal is that from the facts and circumstances known to them at the time they purchased the note, Lewis and Watson had reason to know of the existence of a claim against the note. Thus, we review the circumstances in the record that, according to Opstein, present a factual question as to whether Lewis and Watson were holders in due course. We review the record in a light most favorable to Opstein and give him the benefit of all reasonable inferences deducible from the evidence. See *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

Opstein contends that Lewis and Watson were put on notice that the note was suspect by the fiduciary relationship between Opstein and Farnham; by the fact that the proceeds of the note were directed to Farnham, who was in financial difficulty at the time; by the fact that the note was assigned the same day it was executed; and by the fact that Opstein, a wealthy man, would pay for legal services by promissory note instead of simply writing out a check.

### (a) Fiduciary Relationship

Lewis acknowledged that he knew that Farnham had in the past acted as an attorney for Opstein. That fact alone is of no import. "The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument . . . *in breach of duty*." Neb. U.C.C. § 3-304(2) (Reissue 1980) (recodified under Neb. U.C.C. § 3-307(b) (Reissue 1992)). Under § 3-304(4)(e) (Reissue 1980) (recodified under § 3-307(b) (Reissue 1992)), knowledge that any person negotiating the instrument is or was a fiduciary does not of itself give the purchaser notice of a defense or claim. The

comment pertaining to § 3-304(4)(e) (Reissue 1980) states that "mere notice of the existence of the fiduciary relation is not enough in itself to prevent the holder from taking in due course, and he is free to take the instrument on the assumption that the fiduciary is acting properly." § 3-304 comment 5 (Reissue 1980). See § 3-307 comment 2 (Reissue 1992) (mere notice of the fiduciary status and of the fact that the proceeds of the instrument are being used for the personal benefit of the fiduciary is not enough to put the taker on notice of a breach of fiduciary duty and does not give rise to any duty of investigation by the taker). Lewis, Watson, Farnham, and Opstein were mutual friends, or at least acquaintances. From the perspective of Lewis and Watson, the fiduciary relationship between Farnham and Opstein quite naturally would have affirmed, rather than undermined, the validity of the note.

### (b) Farnham's Benefit

There was nothing remarkable about the fact that Farnham was to benefit from the sale of the note. The note was executed to compensate Farnham for legal work performed for Opstein.

### (c) Timing of the Assignment

If Farnham was in financial difficulty such that he needed to sell the Opstein note, there would be no reason for him to delay. There is nothing peculiar about Farnham's desire to turn the note into cash as soon as possible.

### (d) Execution of a Promissory Note

Opstein suggests that the use of a promissory note in this context was inherently suspect. Yet the record indicates that Opstein and Farnham had executed a virtually identical instrument the previous year to pay for the same types of legal expenses outlined in the note at issue. Without engaging in speculation on financial planning, we simply point out that there might be any number of reasons why even a wealthy man might prefer to utilize some form of delayed payment for legal services.

## VI. CONCLUSION

We find nothing in the circumstances of the assignment of the Opstein note that should have created reservations in the

minds of Lewis and Watson and thereby put them on notice that the note was subject to a claim by Opstein. As a result, we find no evidence in the record that presents a genuine issue of fact as to whether Lewis and Watson were holders in due course. Therefore, the judgment of the trial court granting the motion for summary judgment is affirmed.

AFFIRMED.